## JOHN F. POND *vs.* WILLIAM H. HARRIS.

The revocation of an agreement to submit to arbitration is actionable.

A. and B., by a sealed instrument, agreed to submit certain controversies to arbitration. A. held claims against B. by an assignment under seal from C. absolute in its terms, but held them upon a verbal agreement to account to C. for the proceeds. B. knew that A. held these claims, and that they formed a portion of the matters to be submitted, but was ignorant of the nature of A.'s title to them, and made no inquiry. In an action by A. against B. for revoking the submission: *Held*, that neither the fact that A. was to account to C., nor the fact that he had not an authority under seal from C. to submit the claims to arbitration, nor the fact that, not being inquired of, he did not disclose the nature of his title, justified B. in revoking the submission.

In an action for the wrongful revocation of an agreement to submit a controversy to arbitration, the plaintiff is not entitled to recover damages for the trouble and expense incurred in making the agreement, but can recover for his loss of time and for his trouble and for his necessary expenses in preparing for the hearing, employing counsel, taking depositions, and paying witnesses and arbitrators, so far as he cannot avail himself of these things for the subsequent trial of his case before a court.

CONTRACT to recover damages for the revocation, by the defendant, of an agreement to submit the controversies between the parties to arbitration.

The agreement, which was under the hands and seals of the parties, was " to refer all our said differences as to any transac-

tion or otherwise, whether between ourselves individually, or be-tween either of us and any firm to which the other may have belonged," to three persons named. Each party was to furnish the arbitrators with a written list of his " grievances or charges " against the other; neither party was to avail himself of the stat-ute of limitations, and the arbitrators were to fix a day for the hearing, of which each party was to have at least ten days' notice.

The case was referred to an auditor to report the facts.

At the trial in the Superior Court, before *Bacon*, J., it ap-peared from the auditor's report, and from a statement of facts agreed upon by the parties, that the plaintiff furnished the arbi-trators with his written list of grievances and charges, and applied to them to set a time for a hearing; that they accordingly ap-pointed a day, and that the defendant, as soon as he was notified of the appointment, revoked the submission.

It further appeared, that in 1859 the plaintiff had made appli-cation to be adjudged an insolvent debtor, and his estate had been assigned to Joseph Pratt, his assignee in insolvency, who, for the purpose of settling the estate, sold all of it that then remained undisposed of to one Daniel E. Pond, the son of the plaintiff. The plaintiff thought that a part of the property thus purchased by Daniel E. consisted of unsettled and disputed claims against the defendant, and against the firm of A. & W. H. Harris, of which the defendant had been a member. Daniel E., by a sealed instru-ment, absolute in its terms, assigned to the plaintiff " all claims and demands of every name and nature which I hold against either A. & W. H. Harris, or Wm. H. Harris, by or under a con-veyance to me from Joseph Pratt, assignee," upon the verbal agreement that whatever might be collected upon them should be paid over to him after deducting the cost of collection and a re-muneration for the trouble incurred.

When the defendant entered into the agreement to submit to arbitration, he understood that the plaintiff had in some way, though he did not know the precise way, derived from his as-signee a title to whatever unsettled claims there were belonging to his estate, and that these claims, so far as they were claims

against the defendant, or the firm of which he had been a member, were among those to be submitted to arbitration.

Before the defendant revoked the submission to arbitration, he had commenced suits against the plaintiff upon claims which he had against the plaintiff, and which were embraced within the terms of the submission.

The plaintiff claimed to recover in this action the amount of the claims which he had by assignment from Daniel E. against the defendant and against the partnership of which the defendant had been a member, and which he had been prevented from establishing before the arbitrators by the defendant's revocation of the submission, the expense he had been at in defending the suits brought against him by the defendant, and compensation for the trouble he had been at and the expense he had incurred in preparing for the reference.

The auditor found that all claims belonging to the plaintiff's estate against the defendant and the firm of which he had been a member had been settled by the assignee before the purchase of the residuum of the estate by Daniel E., and that none of these claims passed by the conveyance from the assignee to Daniel E., or from him to the plaintiff, and that the plaintiff could recover of the defendant nothing therefor ; but that the plaintiff was entitled to recover for " expense and trouble " as follows :

" Amount paid counsel . . . . . $750.00
Amount paid counsel . . . . . 150.00
Amount paid counsel . . . . . 100.00
Amount paid arbitrators . . . . . 9.00
For plaintiff's own time and trouble . . 700.00

$1709.00."

The defendant contended that during the negotiations preliminary to the entering into the agreement to submit to arbitration, the plaintiff had concealed from him and from Daniel L. Harris, who was his agent in carrying on these negotiations, the fact that these claims in controversy belonged not to himself but to Daniel E. Pond, and that therefore he was justified in revoking the submission.

The auditor found that the fact of concealment was not established by the defendant, and that he had no sufficient cause to revoke the agreement.

Upon this point the parties agreed that the following questions should be submitted to the jury :

" Did John F. Pond before the revocation by the defendant of the agreement for arbitration, inform Daniel L. Harris that he held said claims in trust for Daniel E. Pond, or that Daniel E. Pond was the owner thereof ?

" Was such trust or ownership made known to Wm. H. Harris, the defendant ?

" Had Daniel L. Harris any authority, as the agent of Wm. H. Harris, to make or negotiate any agreement for arbitration between John F. Pond and William H. Harris in relation to any matters or claims not owned or held by said John F. Pond in his own right ? "

The plaintiff introduced the auditor's report in evidence, and there rested his case. The defendant thereupon contended that the plaintiff was bound to go forward and prove the affirmative upon the questions to be submitted to the jury. The plaintiff contended that the questions were incompetent and immaterial, and that evidence upon them was inadmissible. But this claim was not made until after the plaintiff had opened his case to the jury, put in the auditor's report as *primâ facie* evidence, and rested his case. The court ruled that the questions were competent and material, and that the burden of proving the affirmative was on the plaintiff. Thereupon the plaintiff, without waiving his right to except to the ruling, proceeded to introduce his evidence.

The jury answered all the questions in the negative.

It was admitted that the plaintiff had no other than verbal authority from Daniel E. Pond to make the agreement for arbitration as to the claims by him assigned to the plaintiff.

Upon this state of facts, the defendant contended " that the plaintiff had no authority to make the agreement for arbitration under seal in relation to these claims, and that therefore the agreement was not duly executed by the plaintiff, and that the defendant had for this, among other reasons, a right to revoke the agreement without incurring any liability to the plaintiff."

Upon this state of facts and the findings of the jury upon the questions submitted to them, and upon the agreement of the parties, the court ruled that the plaintiff could not maintain the action, and ordered judgment for the defendant, and reported the case to this court. If in the opinion of the court the questions were material, but the burden of proof was on the defendant, then the case was to be sent back for a new trial on them. If the questions were immaterial or incompetent, and the ruling of the court that the plaintiff could not maintain his action was wrong, then judgment was to be rendered for the plaintiff for the amount allowed by the auditor or for such part thereof as the court should be of opinion the plaintiff was entitled to; the amount to be determined by the court or by an assessor upon such principles as this court might prescribe.

*G. F. Verry & B. W. Potter*, for the plaintiff.

*P. E. Aldrich*, for the defendant.

DEVENS, J.* The law is now settled that the mutual promises of the parties in an agreement for arbitration are sufficient consideration each for the other, and that whichever party, without right therefor, revokes the authority of or prevents the arbitrators from acting, is liable to an action, even if he is not bound under a penalty. *Charnley* v. *Winstanley*, 5 East, 266. *Marsh* v. *Bulteel*, 5 B. & Ald. 507. *Warburton* v. *Storr*, 4 B. & C. 103. *Skee* v. *Coxon*, 10 B. & C. 483. *Rowley* v. *Young*, 3 Day, 118. *Hawley* v. *Hodge*, 7 Vt. 237.

If an action may be maintained for revocation of an agreement of submission, the next inquiry is whether the defendant was justified in thus revoking it. The report finds that the agreement was entered into by the parties under their hands and seals; that the conditions preliminary to a hearing were complied with by the plaintiff; and that immediately after the service of notice of an appointment by the arbitrators of a time of hearing, the defendant revoked the agreement of submission. It appears further, that the plaintiff thought that certain claims which he

---

* At the argument of this and the remaining cases at this term, DEVENS, J., was present, and AMES, J., absent, unless otherwise stated.

originally had against the defendant and the firm of which he was a member, and which claims passed to the plaintiff's assignee upon his insolvency, had been bought by one Daniel E. Pond, from the assignee, and been sold to the plaintiff by said Daniel E. It appeared that the defendant was aware that the plaintiff had in some way obtained a title to any claims of his estate against defendant or his firm which had not before been settled and disposed of, if any such there were, and that it had been arranged between the parties that these claims should be settled by the arbitration agreed upon. Daniel E. Pond had in fact assigned and conveyed to the plaintiff all his claims against the defendant and his firm derived by him from the conveyance of the plaintiff's assignee, but there was a verbal agreement between him and the plaintiff that the plaintiff should pay over to Daniel E. whatever he might collect upon them, after deducting his expenses and charges for his trouble. Of this verbal agreement the defendant claimed to have been ignorant. Besides the plaintiff's claim for damages on account of the violation of this agreement for submission, the present action embraced these disputed claims, and the case having been referred to an auditor by the Superior Court, nothing was found by him to be due except upon the claim for damages by reason of this revocation, upon which he found for the plaintiff.

At the trial in the Superior Court, the case was submitted to the jury upon the auditor's report; and as the defendant claimed that he was justified in revoking the submission, because the plaintiff had concealed the fact that these claims belonged to Daniel E. Pond and that he was acting for Daniel E. Pond and not for himself in this agreement for reference, (which point the auditor had found against the defendant,) the case was submitted by the court to the jury, upon the agreement of parties, upon three inquiries. By the answers to these it is established that the plaintiff did not, before the revocation of the agreement, inform Daniel L. Harris (who was the defendant's agent in making the negotiations which resulted in the deed of submission) that he held said claims in trust for Daniel E. Pond, or that Daniel E. Pond was the owner thereof; and it is established that such trust and ownership was not made known to the defendant, and that Daniel L. Harris had

no authority to negotiate any agreement for arbitration between plaintiff and defendant in relation to matters or claims not owned or held by the plaintiff in his own right. Upon the issues presented by these inquiries, the learned judge who presided at the trial ruled that the burden of proof was upon the plaintiff, but as in our view the facts established by these answers are not material in showing that the defendant was justified in revoking the agreement, it is not important to consider whether this ruling was correct.

That the title to these claims was in the plaintiff was undisputed, and that they were to form a part or the whole of the subjects upon which the referees were to pass was known to the defendant. His claim that he was justified in revoking the agreement for reference, because the plaintiff had failed to inform him that if he recovered anything upon them, after payment of the expenses and for his own trouble, it was to be paid over to Daniel E. Pond, is one which cannot be sustained. If the plaintiff had title to the claims, and was authorized to deal with them as his own, to convey or discharge them, (all which the conveyance from Daniel E. Pond enabled him to do,) what he did or was to do thereafter with the proceeds was a matter of no concern to the defendant, unless he made it so by some inquiry. He knew through what source the plaintiff must have obtained control of the claims. If he had any desire to learn whether any one else had any interest in the avails of them, before he can complain of the plaintiff for concealing any matter in relation thereto, he should at least show that he endeavored to be informed on the subject. The plaintiff had no reason, so far as the report shows, to think that it was a question of the least interest to defendant whether the plaintiff was to put the proceeds into his own pocket or pay them over to some one else. So far as appears, the defendant was not in the slightest degree injured by his want of knowledge of this fact, or his defence in any way impaired or abridged thereby.

The case of *Winchester* v. *Howard*, 97 Mass. 303, cited by the defendant, does not sustain his view of the present case. In that case it was in evidence that in answer to inquiries of the defendant

whether the oxen he was selling were the property of the plaintiffs, their agent, who was engaged in selling them, represented that they were not. The defendant, who offered to show that he had not for many years dealt and did not wish to deal with the plaintiffs, was thereby induced to purchase the oxen upon the agreement that he might return them "if he did not find things" as the agent told him. On hearing that they were the property of the plaintiffs, the defendant returned them. It was held that, inasmuch as he had the right to elect with whom he would deal, he was not responsible to the plaintiffs. If, however, he had bought of the agent without inquiry as to the ownership of the cattle, there could have been no doubt of his responsibility to the principal.

The defendant contends that the plaintiff had only a verbal authority from Daniel E. Pond to make the agreement; but this is a matter of no importance. Daniel E. had conveyed his whole title in the claims to the plaintiff, who could transfer, discharge and dispose of them in any way, and, under these circumstances, needed, so far as the defendant is concerned, no further authority of any kind in reference to the arbitration. It would have been impossible for Daniel E. to have broken up the agreement of submission made by the plaintiff, merely because he had a right to make him account for the net proceeds.

We are, therefore, of opinion that the plaintiff is entitled to recover upon the facts stated in the report, and are next to consider by what rule his damages are to be assessed. It is argued that, as it is found by the auditor's report and by the jury that there was nothing due upon these claims, the plaintiff is entitled to no damages. or at most to but nominal damages, on account of the revocati m, and that it must be deemed that the arbitrators would have come to the result at which the jury have arrived. But the injury that he has sustained by the wrongful act of the defendant is that he has been deprived of his right to submit the claims to the tribunal which the parties had agreed upon. The expenses to which he has been subjected by reason of his necessary preparation for a trial before the arbitrators, on account of his own loss of time and trouble, and in employ-

ing counsel, taking depositions, payments to witnesses, arbitra‑
tors, and expenditures of a similar nature, are proper matters
of claim.    He is entitled to recover these so far only as he has
lost the benefit of them by the act of the defendant.    So far
as these preparations and expenditures were available for the
trial of his cause before the ordinary legal tribunals to which
the revocation of the defendant compelled him to resort, he i
not entitled to recover, as he has had or might have had the
benefit of them.    Ordinarily, it is true, as the defendant argues,
counsel fees are not recoverable ; but if the plaintiff has been de‑
prived, by the wrongful act of the defendant, of the benefit of
those services of counsel for which he had incurred expense, upon
the former agreement for arbitration, inasmuch as they were ex‑
penditures he might properly incur, so far as they were suitable,
there is no reason why he should not recover them in this action.
The principles suggested as those upon which his damages are
to be computed, have been decided to be the proper ones in sev‑
eral cases.

In *Hawley* v. *Hodge*, 7 Vt. 237, the plaintiff had travelled four
hundred miles to attend a session of the arbitrators ; had em‑
ployed and paid counsel, and had paid the arbitrator ; and it was
held, in an action by him for damages, that where a party revokes
a submission, he must pay all damages occasioned thereby, in‑
cluding the cost and expenses which the party had been sub‑
jected to in preparing for trial, to which he would not have been
subjected but for the submission, and which he could not recover
in any other way.    See also *Rowley* v. *Young*, 3 Day. 118 ; *Blais‑
dell* v. *Blaisdell*, 14 N. H. 78.

For the trouble and expense which the plaintiff had been at in
making the contract, he would not, however, be entitled to re‑ ·
:over ; his damages must be only for the breach of the contract.

The judgment for the defendant is therefore to be set aside,
and judgment ordered for the plaintiff ; and as it is impossible
for us to determine by the report upon what principles the audi‑
tor assessed the damages, the amount for which such judgment is
to be rendered is to be determined, upon the principles above in‑
dicated, by an assessor to be appointed by the Superior Court.

*Judgment for the plaintiff.*