**A. D. DONNELLY and J. B. Harvill,**
**Appellants,**

v.

**Clifton Joe YOUNG, Appellee.**

No. 17231.

Court of Civil Appeals of Texas,
Fort Worth.

Sept. 24, 1971.

Rehearing Denied Oct. 22, 1971.

Bill Atkins, Arlington, Royal H. Brin, Jr., Dallas, and Ernest May, Fort Worth, for appellants.

L. Clifford Davis, and Buck, McBryde & Bogle, and John McBryde, Fort Worth, for appellee.

## OPINION ON MOTION FOR REHEARING

MASSEY, Chief Justice.

Our opinion of June 18, 1971, is withdrawn, with the following substituted.

The case is one in which plaintiff Young recovered judgment for actual and exemplary damages of Donnelly and Harvill because of their tortious conduct occasioning expenditures, including attorneys' fees, to avert loss of title to real estate. Donnelly and Harvill appealed.

Judgment affirmed.

At the time of trial the only plaintiff was Clifton Joe Young, and the only defendants A. D. Donnelly and J. B. Harvill. At the beginning stage, when suit was first filed on September 30, 1966, it was by way of a suit in Trespass to Try Title filed by Clint M. Smith against Young. Young answered by the usual pleadings of a defendant in such a suit, later amended in elaboration thereof, and including Young's suit by way of cross-action against Donnelly and Harvill and Smith, and still later adding Donnelly's wife and other interested parties. Donnelly's wife and the other parties went out of the case under circumstances not material to our opinion. Smith remained in the case until on or about October 27, 1969, when he non-suited his case against Young and Young dismissed Smith as a cross-defendant sued.

Young and Smith settled their controversy on all counts, with Smith investing Young with title to the property by delivery of a Special Warranty Deed. Further, by way of assignment, Smith transferred to Young any claims which he possessed or could assert against Donnelly or Harvill. Under the assignment Young promptly amended his pleadings and sued Donnelly and Harvill not only as before, but also (as Smith's assignee) for Actionable Fraud under the provisions of Vernon's Ann.Tex. Civ.St. Article 4004.

Trial was to a jury. The verdict was returned and judgment rendered thereon in favor of Young and against Donnelly and Harvill in accord with Young's theory of cross-action prior to the assignment to him of Smith's claims against the same defendants. However, the trial court disregarded the jury's answers to special issue findings under the theory of the assigned Smith cause of action, and Young was denied any recovery based thereon.

In our consideration of the appeal we have for consideration cross-points of error presented by Young in addition to the points of error by Donnelly and Harvill.

Since this opinion will be rather lengthy, we will state our observations applicable to a cause of action for malicious conversion as result of which an entire property is lost, and as applied to the similar character of action where the victim of a like tort is successful in steps taken to recover or avert the loss of his property. Under the latter circumstance would oftentimes be found those cases involving realty by reason of the fact that land is fixed and immovable and any titular interest therein which is the subject of tortious conversionary action and found to apparently be the property of another—according to our system of recording and record-keeping in real estate transactions—is sometimes recoverable. The exception, of course, is when the title is found to be in some inno-

cent third-party who has made a "value" purchase of the property. (Of course such an apparent condition of the title to realty is not necessarily true and if the third-party is or may be shown through litigation to have not truly been "innocent", etc., the purported transaction whereby he seemed to own the property may be set aside and held for naught).

■ Where there has been a successful tortious conversion of a victim's property, real or personal, the measure of actual damages to which he is entitled from the tort-feasor is the value of the property converted at the time of the conversion. He is not additionally entitled to any expenses of suit or preparation therefor in the litigation pursuant to which he recovers his damages.

■ Where the victim recovers his property, or averts the successful conversion thereof, the measure of damages to which he is entitled from the tort-feasor is wholly unrelated to any value of the property. He is entitled to the value of its use while he was out of possession, if that be the case, as applied to personal property—and as applied to realty he is entitled to its rental value while he is out of possession for that is the measure of the value of the use of land in the ordinary case. Additionally, in either case, he is entitled to the expenditure made by him which from his viewpoint was necessarily incurred in the recovery of his property or in averting the successful conversion thereof. In the case of realty this would include any payment made by him in order to purchase and "buy back" the property (i. e. title thereto in the same condition as at the time it was taken from him) plus any incidental expense necessary from his viewpoint; and, if he is put to expenses, payments, attorney's fees, and time of his own, necessarily incurred from his viewpoint in the removal of incumbrances and/or clouds on his title, existent because of or as the natural result of the tortious act which would have amounted to conversion had it been actual-

ly accomplished, this would include the amounts paid or obligated to be paid as incurred, plus the value of his own time.

Obviously, what has been said would be entirely applicable to a situation where the victim entered into litigation with a third-party who claimed to be an innocent purchaser for value with the objective of defeating his claim of such status. Should the victim lose his case against the third-party none of his expenditures or time and trouble would be recoverable in his subsequent suit for damages against the tort-feasor. The measure of damages in such a subsequent suit would be the value of the property converted at the time of its conversion. But should the victim prevail in his case against the third-party—and the same thing would apply if instead of prosecuting such case to judgment the victim make a payment which from his standpoint was necessary to resolve his dispute with the third-party and dispose of the litigation by settlement—he would be entitled to recover of the tort-feasor the amount of such payment plus expenses, payments and attorney's fees and the value of time of himself incurred and/or made necessary from his viewpoint. Of course the requirement would obtain that the victim not thereby increase the amount of his actual damages beyond those for total conversion.

In the prosecution of his case against the tort-feasor however, in either event, the victim would not be entitled to any recovery for his subsequent time and trouble pursuant to such prosecution, nor of his expenses, payments, attorney's fees, etc. necessarily incurred or not in the preparation for and actual conduct of his suit.

Since the verdict was in part in accord therewith, we believe it to be convenient to copy from the allegations in Young's pleadings to show the factual situation which may be accepted for our purposes:

"In mid-1965, Mr. Young went to Harvill to inquire about borrowing money to pay off a debt of about $1,400.00 owed by Mr. Young to a Mrs. Turpin. Harvill put

Mr. Young in contact with Donnelly, who is Harvill's brother-in-law. Donnelly agreed to make the loan. Mr. Young then asked that the loan be increased by $1,000.00 so that he could make minor improvements on pieces of rental property owned by him. Donnelly expressed agreement. Harvill then prepared the loan papers, consisting of a note and deed of trust securing same and an assignment to Donnelly of the lien that secured the approximate $1,400.00 indebtedness to Mrs. Turpin, which was to be paid off out of the proceeds of the new loan from Donnelly. The deed of trust taken by Donnelly through Harvill from Mr. Young covered 8 pieces of property owned by Mr. Young in Fort Worth, Texas. * * * The note taken from Mr. Young by Harvill for the benefit of Donnelly was payable to Donnelly, and stated a principal amount of $2,600.00, and stated that the payments would be $83.90 per month. Said note and deed of trust taken by Donnelly through Harvill from Young were dated June 15, 1965. Said note did not accurately reflect the consideration given therefor, and the amount owed thereon, inasmuch as it did show a $2,600.00 principal obligation when, in fact, the only money or other consideration ever advanced by or on behalf of Donnelly to Mr. Young or on his behalf as consideration for said note was $1,600.00, about $1,400.00 of which was paid to Mrs. Turpin, the holder of the earlier note, and the balance of which was kept by Harvill as a fee for handling the transaction for brother-in-law Donnelly. In order to induce Mr. Young to sign the inaccurate $2,600.00 note, Harvill assured Mr. Young that he would receive another $1,000.00, and that if, for any reason, he did not, he would never be called upon to repay more than the $1,600.00 which was advanced, together with appropriate interest on that amount; and, Mr. Young was assured by Harvill that the monthly payments would be somewhat less than the $83.90 specified in the note. In all dealings with Mr. Young with reference to said deed of trust and note, Harvill was acting as agent of and with authority of Donnelly and the 2 of them were co-conspirators in an effort to cheat Mr. Young. No further advances were made by or on behalf of Donnelly to or for Mr. Young, with the result that all the maker of the note ever received as consideration for the note was the $1,600.00 heretofore mentioned. As a result, Mr. Young's repayment obligation with respect to said note was limited to $1,600.00, with proper interest thereon. Harvill and Donnelly knew, at all times material hereto, that the real indebtedness to Donnelly was so limited, and that the Donnelly deed of trust did not secure any other or greater indebtedness.

"In March, 1966, Mr. Young made arrangements with Oak Cliff Savings and Loan Association for a loan of approximately $26,000.00 to pay off several indebtednesses owed by him against his properties, including the Donnelly indebtedness. When effort was made to pay off the Donnelly indebtedness for the amount properly owed on it (Mr. Young, by this point in time, having made several payments on the Donnelly note), Harvill and Donnelly insisted that Donnelly would have to receive approximately $2,800.00 as payment on the note before he would release his deed of trust lien. Because Mr. Young did not owe that much on the note, he was not willing to pay the $2,800.00 that Harvill and Donnelly were trying to extract from him, but did offer to pay to Donnelly the amount properly owed on the note, but Donnelly, in person and through authorized representatives of his, refused to accept payment of the amount actually owed on said note. In order to complete said Oak Cliff Savings and Loan Association loan, Mr. Young made arrangements with the title company that handled the Oak Cliff loan transaction to retain enough money in escrow to take care of the Donnelly note if and when Donnelly decided to accept what he had rightfully coming to him.

"Donnelly and Harvill and Mrs. Donnelly had full knowledge that said funds were

being held in escrow by the title company and that payment of the proper balance due on the note could be had at any time they evidenced a willingness to accept it. Their refusal to accept proper payment on said note was part of a conspiracy and scheme to create a situation whereby they might be able to claim that they conducted a foreclosure under the Donnelly deed of trust and that said foreclosure deprived Mr. Young of his property and vested title thereto in the party who would pretend to be a purchaser at the foreclosure sale. By this time, if she had not already done so, Mrs. Donnelly had decided to join in the scheme and conspiracy, and actually participated in the scheme to deprive Mr. Young of his property.

"Harvill, Donnelly and Mrs. Donnelly now claim and pretend that, instead of accepting payment of said Donnelly note, they arranged for Harvill, who was named as trustee in the Donnelly deed of trust, to post notices of trustee's sale under said deed of trust in April, 1966, and they further claim and contend that such a foreclosure sale was actually conducted on May 3, 1966. According to them, Donnelly purchased the property at the foreclosure sale on a bid of approximately $2,800.00. Mr. Young says that there never was any foreclosure sale; and, in the alternative, if there was, it was an invalid and unauthorized one.

"As part of the fraudulent conspiracy to try to deprive Mr. Young of his property, Harvill had prepared and executed a trustee's deed whereby said property was conveyed by Harvill, as trustee under said deed of trust, to Donnelly, which trustee's deed is recorded in Volume 4209, page 375, Deed Records of Tarrant County, Texas, reference to which is here made for the terms and provisions thereof. Donnelly, Harvill and Mrs. Donnelly then arranged to place said trustee's deed of public record in Tarrant County, Texas, and their purpose in having said trustee's deed executed and in placing it of public record was to make it appear that Donnelly had become the owner of Mr. Young's property.

"Then, in order that it would even be more difficult for Mr. Young to retrieve his property, Donnelly, Harvill and Mrs. Donnelly made arrangements to convey the property to a Mr. Clint M. Smith, who is said to have paid $2,600.00 for it (although it was valuable enough to withstand a loan of $26,000.00 and although it had a market value of $50,000.00 or more). Said conveyance to Mr. Smith was made by deed dated August 20, 1966, which was placed of public record in Tarrant County, Texas, and is now recorded in Volume 4279, page 343, Deed Records, Tarrant County, Texas, reference under which record is here made for the terms and provisions of the said instrument.

"Following the aforementioned conveyance to Mr. Smith, Mr. Smith then instituted a trespass to try title suit against Mr. Young, seeking to establish that he, Mr. Smith, had become the owner of Mr. Young's property. Said trespass to try title suit was docketed under the court number and style of this suit. Because of the possibility that Mr. Smith might be deemed a good faith purchaser for value, with the result that he might be faced with a complete loss of his property, Mr. Young made settlement with Mr. Smith of whatever claim Mr. Smith might have to Mr. Young's property by arranging to have paid to Mr. Smith $4,000.00 in exchange for a conveyance by Mr. Smith to Mr. Young of Mr. Young's property. Said payment was a reasonable amount to pay for said conveyance, considering all of the facts and circumstances pertaining to the claim of ownership to Mr. Young's property that was being asserted by Mr. Smith."

The more specific reasons why Young should be given relief from Harvill and Donnelly, and the nature of the relief sought by him, are then spelled out in his Third Amended Action and a trial amendment thereto. Quoting from the Third Amended Action, this time with reference

to the Second Count, Young's pleadings alleged:

"Prior to and when Donnelly made the heretofore mentioned conveyance by deed dated August 20, 1966, to Mr. Smith of Mr. Young's property, Donnelly and his co-conspirators, Harvill and Mrs. Donnelly, acting by and through each other, represented to and assured Mr. Smith that a valid foreclosure sale had taken place under the aforementioned deed of trust taken by Donnelly from Mr. Young in June, 1965, following default of the indebtedness secured by said deed of trust, and that the heretofore mentioned trustee's deed, dated May 3, 1966, from Harvill, as trustee, to Donnelly, was a genuine conveyance pursuant to a lawful, valid and legally conducted foreclosure sale. Included in the representations thus made were express and/or implied representations that Donnelly had the right to foreclose, that notice of the foreclosure sale had been timely and properly posted and that the sale was held in the manner required by law. In making whatever payment he made to Harvill, Donnelly and Mrs. Donnelly, in exchange for said August 20, 1966, deed, Mr. Smith relied upon said representations and assumed that they were truthful, and he was induced by said representations to take said August 20, 1966, deed and give consideration therefor. In truth and in fact, all of said representations were false. Mr. Smith did not become aware of the falsity of said representations and had no legal reason to be aware of the falsity of said representations until after depositions of Harvill, Donnelly and Mrs. Donnelly were taken on and after December, 1968. If the representations concerning the foreclosure sale and trustee's deed had been true, the property in question would have had a value to Mr. Smith of approximately $50,000.-00. The actual value of the property to Mr. Smith, in view of the falsity of the representations, was virtually zero. Mr. Smith was able to cause Mr. Young to pay him $4,000.00 for a reconveyance of the property to Mr. Young, but by the time such reconveyance was made, Mr. Smith had incurred several thousand dollars in attorneys' fees in connection with litigation arising out of the conveyance to him of the property, with the result that the $4,-000.00 payment received by him did not represent a true value of the property to him at the time he took said deed from Mr. Donnelly. Because of the aforementioned fraudulent representations, which constituted false representations of past and existing material facts which were made as a material inducement to Mr. Smith to enter into the contract to purchase the property in question, Mr. Smith became entitled to recover as damages from Harvill, Donnelly and Mrs. Donnelly the sum of $50,000.00, the measure of damages contemplated by Article 4004, Revised Civil Statutes of Texas. In this connection, Harvill, Donnelly and Mrs. Donnelly either made the fraudulent representations and/or derived benefit therefrom, with the result that they are jointly and severally liable for said $50,000.00 damages. Inasmuch as said false representations were made willfully by Harvill, Donnelly and Mrs. Donnelly, and inasmuch as each of them knowingly took advantage of said fraud, each of them became liable, jointly and severally, to Mr. Smith, for exemplary damages in the amount of $100,000.00, as authorized and contemplated by Article 4004, Revised Civil Statutes of Texas.

"For valuable consideration, Mr. Smith assigned to Mr. Young all claims possessed by him against Harvill, Donnelly and Mrs. Donnelly arising out of or with respect to the transactions in question. Such assignment would include all claims that Mr. Smith had or could have asserted against Harvill, Donnelly or Mrs. Donnelly under or by virtue of the provisions of Article 4004, Revised Civil Statutes of Texas. In pertinent part, said assignment reads as follows:

"'That I, CLINT M. SMITH, for $10 and other good and valuable consideration, do hereby transfer, assign and set over unto Clifton Joe Young all claims of any

kind or character, legal or equitable, that I possess or could assert against J. B. Harvill, A. D. Donnelly or Mrs. A. D. Donnelly, jointly or severally, arising out of or pertaining to a conveyance made by A. D. Donnelly, M. D. to me by Special Warranty Deed recorded in Volume 4279, page 343, Deed Records of Tarrant County, Texas, or arising out of or pertaining to representations made to me concerning history or ownership of or title to the property described in said Special Warranty Deed, or in any manner arising out of or pertaining to the property described in said Special Warranty Deed or liens or indebtednesses against or said to be against said property. In order that this assignment shall not be construed as being limited in any manner, I expressly assign, transfer and set over unto Clifton Joe Young all claims of any kind or character that I might have against J. B. Harvill, A. D. Donnelly and Mrs. A. D. Donnelly, jointly or severally, as a result of or arising out of any fact or circumstance or set of facts or circumstances.' Mr. Young, as assignee from Mr. Smith, hereby asserts the claims Mr. Smith possessed against Harvill, Donnelly and Mrs. Donnelly, as hereinabove alleged, under and by virtue of Article 4004, Revised Civil Statutes of Texas, and on the basis of said claims and said assignment, Mr. Young here asks recovery from Harvill, Donnelly and Mrs. Donnelly of an additional $50,000.00 as the actual damages contemplated by said Article 4004, and an additional $100,000.00 as exemplary damages contemplated by said Article 4004."

The judgment which the trial court rendered, as applied to the action of Donnelly and Harvill as tort-feasors and because of their action which, if successful, would have amounted to the total conversion of Young's realty, was for actual damages as follows: $4,000.00, the amount paid by Young to Smith pursuant to settlement of the litigation between them and for delivery of the special warranty deed from Smith to Young of the claims to the property theretofore asserted by Smith under the deed he had received from Donnelly;

$1,420.95, expenses incurred by Young pursuant to the prosecution of litigation against Smith; $2,000.00, expenses incurred by way of attorney's fee owing by Young to L. Clifford Davis pursuant to the litigation against and settlement thereof with Smith; and $8,715.00, expenses incurred by way of attorney's fee owing by Young to John McBryde pursuant to the litigation against and settlement with Smith. The total of the actual damages awarded was $16,135.-95, and was a joint and several judgment against Donnelly and Harvill.

Additionally, and by way of exemplary damages because of the malice and/or gross negligence of the tort-feasors in their actions to the prejudice of Young's interest in his realty, he was granted $25,-000.00 in judgment against Donnelly and another $25,000.00 in judgment against Harvill.

By its judgment the trial court denied Young any further recovery against either Donnelly or Harvill. In other words, despite jury findings which Young contends should have entitled him to additional amounts against both Donnelly and Harvill as the entitlement of Smith—and become his own entitlement because of Smith's assignment of such entitlement to Young pursuant to a purchase made as an incident to the settlement which disposed of the litigious controversy existent at the former time between Young and Smith—the trial court disregarded the jury's answers returned and in effect held that Smith was not entitled to recover anything and neither was Young entitled to anything under his assignment from Smith.

We repeat: in the course of what we treat as antecedent litigation, Smith had filed a suit in Trespass to Try Title against Young. Young, in such case, had filed a cross-action against Smith, joining Donnelly and Harvill as co-defendants. Some time later Young and Smith settled their dispute by Young's payment of $4,-000.00 to Smith and taking an assignment of Smith's cause of action against Donnel-

ly and Harvill and also taking a deed to his property which Smith had bought from Donnelly. The case number remained the same, with the case become one between Young, as plaintiff, and Donnelly and Harvill, as defendants. These defendants contend that there was one case, and one suit, and Young may not recover any expenses or attorneys' fees on any theory that there had been a "prior" action in which they had been incurred.

■ Our conclusion and holding is that, for purposes of this case it would be proper to treat Young's cause of action against Smith as a "prior" action, i. e., as having been the subject of suit separate and distinct from his suit against Donnelly and Harvill. Only by so doing could justice be done, and to refrain from so doing would be to admit the existence of a wrong done Young by Donnelly and Harvill, and damages thereby occasioned as the result, while at the same time declaring Young to be without remedy. We believe that to do so would be in accord with the direction and authorization of the most authoritative of the Texas Rules of Civil Procedure. T.R.C.P. 1, "Objective of Rules".

The litigating parties are in accord that Young is not entitled to recover expenses, or attorneys' fees, incurred in or pursuant to the prosecution of the case on trial. Their dispute exists by reason of Young's contention that the damages for which he obtained judgment were experienced in a "prior" case, while Donnelly and Harvill contend that they were experienced in this very case, and in its preparation for trial.

Until Young settled with Smith on or about October 27, 1969, Smith had been a co-defendant to Young's action along with Donnelly and Harvill under Young's assertion that all three were co-conspirators acting to tortiously convert his property through a fictitious or fraudulent sale under the deed of trust and, in furtherance, by a fictitious sale by the purchaser at the trustee's sale (Donnelly) to Smith. The joinder of all three of the parties as co-de-

fendants was pursuant to sound legal practice on the part of Young's attorneys. But for such joinder the attorneys might have been derelict in their duty to their client. Indeed, it might have been an obligation that the attorneys join Donnelly and Harvill as co-defendants in the suit against Smith. T.R.C.P. 97, "Counterclaim and Cross-Claim". Certainly it could have been possible that the trial court could have ordered such done. T.R.C.P. 39, "Necessary Joinder of Parties."

If it be necessary, we believe that principles of equity would be properly invoked and under that theory there would be justification for our treatment of the cases as separate and distinct, with one as the "prior" action and the other as the case on trial to recover the expenses incurred in such "prior" action, with Donnelly and Harvill equitably estopped from a contrary contention.

Had Young been able to settle with Smith for a greater amount of money, that is a sum paid Smith in order to get back title to the property before Donnelly and Harvill were ever brought into the suit (initially formed by Smith's suit in Trespass to Try Title against Young), there would have been no question of Young's right to maintain his subsequent suit for damages against them in trover because of their (attempted) conversion. Under the altered circumstances, whereby in order to obtain a reduction in the price necessary to be paid to Smith (in order to get back the title—with an enhanced expenditure incurred and/or enhanced amount of attorneys' fees incurred in order to "hammer down" the price) Young had found it necessary to join Donnelly and Harvill as co-defendants to Smith, said co-defendants should not be permitted to claim that Young's case with Smith was not a "prior" action once Smith ceased to be a party defendant. They are in the position of having obtained a benefit through Young's action to reduce the price, a diminishment of the damages owed by them to Young because of their tort.

In any event the Rules of Civil Procedure do not furnish a tort feasor case such as this, a "trap" through use of which he may cause an injury to another, to his benefit, and yet defeat the ability of such other to have him make good the damages thereby sustained on the theory that the tort was non-remedial. The objective of the Rules is the accomplishment of justice and they are without application and not proper to be applied to accomplish injustice.

In our former (withdrawn) opinion we stated our conclusion that the judgment should be reversed because there was want of evidence of probative force and effect to support Young's judgment for actual damages. In other words our reversal was on the theory that Donnelly and Harvill had raised and preserved the contention that there was "no evidence" which served to support answers of the jury finding a total of $10,715.00 as attorneys' fee expenses (attorneys Davis and McBryde) and other expenses of $1,420.95, as part of the actual damages in the case.

It was not because of absence of proof of damages of such character that we concluded there was "no evidence" of the damages; rather it was because of our conclusion that the attorneys' fees and expenses proven included those which enured to the aid and benefit of Young in the prosecution of the instant lawsuit; i. e., that they were neither confined to what might be treated as the antecedent case of Young versus Smith nor included evidence from which the jury could have "carved out" a part or proportion of the entire expenses and attorneys' fees and select a part thereof to find as attributable solely to Young's recovery of title to his property.

Stated another way; since the value of a mare is not proven by evidence of the combined value of a mare and her colt, neither could it be said that Young had proven his expenses in what we treat as a separate transaction (the case against Smith to recover his title) when his proof

necessarily covered such *plus* part of his expenses in the prosecution of his suit against Donnelly and Harvill. It was concluded that with the record in such a condition we were obliged to sustain a contention that there was "no evidence" supporting the judgment based upon the answers to such issues.

On the law relative to the necessity for one to confine the evidence, or to confine the findings in the verdict, to the damages sustained by reason of the antecedent transaction or suit, etc. see the following: Restatement of the Law, Torts, Sec. 919, "(Damages for) Harm Suffered and Expenditures Made in Efforts to Avert Harm"; 45 A.L.R.2d 1183, Annotation, "Right to recover as damages attorneys' fees incurred in earlier litigation with a third person because of involvement therein through a tortious act of present adversary"; 7 C.J.S. Attorney and Client § 204, "—Evidence", b. "Admissibility", (3) "As to Nature and Extent of Services" p. 1119 and at p. 1136 under § 205, "—Trial"; McCormick on Damages, Hornbook Series, Sections 66, "Fees and Expenses of a Previous Litigation", and 67, "Where the Previous Litigation is Due to Defendant's Tort"; 1 Sutherland on Damages (4th Edition) Sec. 53, "(Compensation—Required Certainty of Damages) * * * Must be certain in their nature and cause"; Pond v. Harris, 113 Mass. 114 (Supreme Judicial Court of Massachusetts, 1873); Thouron v. Skirvin, 57 Tex.Civ.App. 105, 122 S.W. 55 (Galveston, Tex.Civ.App., 1909, error ref.); and Bryant v. Lewis, 27 S.W.2d 604, 608 (Austin, Tex.Civ.App., 1930, writ dism.).

The special issues in question were Nos. 41, 42 and 43, each asking the jury to find a proper amount as a separate part of Young's damages because of some expense incurred which he sought to recoup. In our former (withdrawn) opinion we noted that since no exception was taken to issues under consideration upon damages, all of them inquiring about expense or attorneys' fees "necessarily incurred as a direct and

proximate result of the placing of the May 3, 1966, trustee's deed of record and the giving to Clint M. Smith of the deed dated August 20, 1966", a judgment could probably have been founded upon answers returned by the jury had the state of the evidence permitted. Necessarily, our reference was to the state of the evidence in view of the attack made by points of error that there was "no evidence".

Of course, the want of probative force and effect of such evidence as there was —because such necessarily embraced expenses incurred in more than that single or severable "prior" transaction—must have been the subject of complaint. It was the subject of complaint in the points of error but was not, we have discovered, the subject of any assignment of error in the motion for new trial filed in the trial court.

■ In the circumstances of the instant case an error of such character must be raised in the trial court; afterward error there raised may, if desired, be preserved and presented to the appellate court by points of error. Since the requisite complaint in the assignments of error presented to the trial court were not made in the motion for new trial we hold that the want of evidence is immaterial; that complaint may not be made in this Court because thereof. T.R.C.P. 321, "(New Trials) Form."

As to each of the damage issues aforementioned (Nos. 41, 42, and 43) nothing in the assignments of error complained because of any want of support by evidence. Each complaint consisted of the contention/assertion that the jury finding of damages by such issues was "immaterial".

■ In Ice Service Company v. Scruggs, 284 S.W.2d 185, 190 (Fort Worth, Tex. Civ.App., 1955, writ ref., n. r. e.) we had occasion to consider T.R.C.P. 321 and its provision that each ground of a motion for new trial shall refer to that part of the ruling of the court, charge given the jury, or charge refused, in such way as *that the point of objection can be clearly identified and understood by the court.* Our conclusion was then, and is now, that to qualify according to the Rule—so that error is raised before the trial court—the matter complained of by the assignment of error must be so clearly identified that it should be understood by the judge of the court, and so that he is afforded the first full and fair opportunity to correct the error, if any, thus pointed out, or to grant a new trial if need be.

It is obvious, in our opinion, in view of the assignments of error insisting that the jury's answers to the special issues (Nos. 41, 42, and 43) were "immaterial", that the judge of the trial court was invited to view and consider the answers as supported by the evidence and concern himself only with the matter of whether the jury's answers thereto actually furnished support for the judgment. The trial judge was *not* asked to test the issues by the evidence; indeed the very complaint of the assignments served to divert his attention from any deficiency therein.

The trial court, not having been afforded the first opportunity to detect the deficiency in evidence to support the answers of the jury Donnelly and Harvill may not be permitted to complain of such deficiency by any point of error. For that reason the points wherein such complaint is made are overruled.

Donnelly and Harvill did, in their Motion for Judgment Non Obstante Veredicto, made before entry of judgment in the case, contend that these same jury findings on evidence were without support by evidence.

■■ However, a motion for judgment *non obstante veredicto* has for its object a demand for judgment, not for a new trial. In the instant case, under other findings by issues, Young was undoubtedly entitled to nominal damages. Further, by a damage finding the jury found that Young was damaged by the expenditure of $4,000.00 paid to Smith to obtain a deed which

would clear his title. Such finding (with additional implied findings proper to be made and presumed as made) entitled Young to judgment in the amount of $4,000.00. That being true the motion for judgment *non obstante veredicto* of Donnelly and Harvill was properly overruled. The trial court's action in such respect being without error the contention to the contrary, though made by assignment of error and presented by points of error, could not be said to have sufficed to raise and preserve the contention that there was "no evidence" to support the jury's answers to Special Issues 41, 42, and 43, or the judgment based thereon.

Only one of the assignments of error occasion additional discussion. Assignment of Error No. 32, reads as follows: "The Court erred by awarding to Young against Donnelly and Harvill, each, $25,000 for exemplary damages. There being no proof of actual damages on account of the alleged fraud, no exemplary damages were recoverable. * * * "

Did the language quoted meet the test of T.R.C.P. 321? Did it refer to the proof on damages—including those damages found by the jury in answer to Special Issues Nos. 41, 42, and 43—in such way that the trial court should identify and understand that the question posed was the existence of evidence supporting those jury findings? We hold that the assignment of error was insufficient to comply with the Rule and that it did not raise the question of want of evidence to support the answers to the specific issues or the judgment based on such answers.

As previously noticed we hold that there was no question but that Young was entitled to recover, as damages, the $4,000.00 paid to clear his title. The assignment (No. 32) directed the court's attention to the award of *any* exemplary damages in the case, in the contention that in order for there to be propriety in any award of exemplary damages a proper judgment for actual damages must serve as a basis.

That is the law. But, presumably, the trial court believed there was no doubt that Young had proven some actual damages, and in such conclusion the court would have been correct. By the assignment the court was not required to look further into the evidence than would be necessary to determine that there were some damages; certainly not required to re-examine the proof on actual damages in every respect in which there had been a finding. Had the assignment directed the court to a complaint which embraced the state of the proof supporting Special Issues 41, 42, or 43 it would have been sufficient, but since it did not do so we cannot say that the trial court should have understood that his attention was directed to the deficiency in that proof. The requirements of Rule 321 were not satisfied by the assignment of error.

The complaint of the allowance of exemplary damages is predicated upon impropriety of allowance of actual damages in some respect so that the total of actual damages would be reduced. With such reduction the award of exemplary damages would, in that event, be without support for judgment. Since, in view of our above holding, the actual damage total may not be disturbed the requisite support for the jury's award of exemplary damages is supplied. Points of error complaining of the judgment in respect to exemplary damages are overruled.

There were other errors on trial of which Donnelly and Harvill complain by points of error. In one respect the improper admission of records, and testimony relative thereto, on the theory that they qualified as business records when they did not so qualify, would inhibit the answer to one of the special issues, such evidence providing the only support for the answer. That issue was Special Issue No. 19 in answer to which the jury found that Mr. Harvill failed to post the requisite notices of the deed of trust sale in the manner and for the length of time provided by law.

■ However, even when the jury's answer to Special Issue 19 is disregarded several other issues and answers returned thereto remain unimpaired. These provide adequate support for the judgment. Apart from its operation to destroy the special issue as a basis upon which the judgment was rendered, the reception of such inadmissible testimony did not occasion the return of a verdict other than that which probably would have been returned had it not been before the jury. The error was not reversible error in view of T.R.C.P. 434, the "harmless error" rule.

■ The same thing may be said of the introduction of testimony bearing on attempts at compromise and settlement. In view of the entire record our conclusion is that it amounted to harmless error merely.

The cumulative effect of such errors, discussed above, did not amount to reversible error. T.R.C.P. 434.

Several points of error are overruled as immaterial. Most of them relate to jury findings and want of evidence in support thereof which counsel concedes to have been collateral merely.

All of the points of error of Donnelly and Harvill, whether or not covered by the discussion above written, have been severally considered and are all overruled.

We are brought to the cross-points of error presented by Young. They are directed to the refusal of the trial court to render judgment in his behalf upon special issue findings based upon Smith's right to recover damages of Donnelly and Harvill. Young had received the Smith cause of action by assignment.

■ We hold that the trial court did not err in refusing to award Young a judgment of any character upon the jury findings establishing the difference in the "fair market value" of the ownership interest acquired by Smith, in his purchase from Donnelly following the wrongful, spurious or fraudulent trustee's sale, and the "fair market value" of what Smith actually obtained. Such jury findings did not establish a measure of damages upon which a judgment in favor of Young, as assignee of Smith, could properly be founded.

In the first place Young could not, after assignment, preserve his identity as an individual plaintiff, as he was prior to receipt of his assignment of Smith's cause of action against Donnelly and Harvill, and at the same time free himself of the accusations made against Smith when he was an adverse party. Even when we consider the pre-existent suit between Young, as cross-plaintiff, and Smith, as co-defendant with Donnelly and Harvill (the situation existent up until the time of the assignment), as a "prior" action Young is judicially estopped by former pleadings, under oath, accusatory of Smith to the contrary of the assertions he made in his later pleadings as Smith's assignee. Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956). The sworn pleadings of Young asserted that Smith knew or should have known of the infirmities and clouds on the title of the subject property. Neither by Young's subsequent pleadings or in his evidence does he attempt to show any inadvertence, mistake, fraud or duress in the making of the antecedent pleading.

Furthermore, under the evidence and under findings of the court impliedly made in support of the judgment denying Young any relief in this respect—they would be treated as including the finding that Smith had constructive notice of those very infirmities and clouds on title. T.R.C.P. 279, "Submission of Issues".

■ Additionally, it is to be remembered that even if Young was entitled to recover as Smith's assignee, Article 4004, V.A.T.S., "Actionable fraud", is the applicable statute. Thereunder the material inquiry would be upon "value as represented". Such inquiry was not made. Furthermore, the statute is penal in nature and must be strictly construed. Westcliff Co. v. Wall, 153 Tex. 271, 267 S.W.2d 544

(1954). Indeed there was no evidence of value "as represented". The obvious purpose and reason for this statutory provision is to protect purchasers who by misrepresentation are induced to pay more for land (considerations given liens, circumstances of which purchasers would be "on notice", etc.) than it is reasonably worth; not to insure that a purchaser who pays less than a fair market value of the land should gain a right to recover damages as a benefit to his bargain.

Other cross-points of error presenting matters not discussed have been severally considered and are all overruled.

Judgment is affirmed.