Robert J. PIERSON, Appellant,

v.

GFH FINANCIAL SERVICES CORPORATION and Drew Darby, Appellees.

No. 3–91–086–CV.

Court of Appeals of Texas, Austin.

April 1, 1992.

James V. Roberts, Mankoff, Hill, Held & Goldburg, P.C., Dallas, for appellant.

Charles E. Jones, Jr., Jones & Edwards, Sweetwater, for appellee GFH Financial Services Corp.

Drew Darby, W. Drew Darby and Associates, San Angelo, for appellee Drew Darby.

Before POWERS, JONES and KIDD, JJ.

PER CURIAM.

Robert J. Pierson appeals a judgment awarding appellee GFH Financial Services Corp. $15,000.00 based on Pierson's conversion of irrigation equipment, and denying Pierson any recovery against appellee Drew Darby. GFH[1] brings three cross-points concerning costs and attorney's fees, and contending that Pierson brought this appeal for delay. We will overrule all points and cross-points and affirm the judgment of the trial court.

On November 10, 1978, GFH leased irrigation equipment to Gary and Betty Condra. On December 26, 1980, that lease was assigned, with GFH's consent, to Clifford and Joyce Hoelscher. The Hoelschers purchased the real property on which the equipment was located. This property was foreclosed and sold to Texas Commerce Bank—San Angelo on April 1, 1986. The bank sold the property to Darby on November 14, 1986. A day earlier, Darby and Pierson had entered into an agreement giving Pierson an option to buy the land, un-der which Pierson began farming. Pierson bought the land on May 31, 1988.

During March 1988, GFH learned that the irrigation equipment was no longer on the real property. After learning of its disposition, an attorney for GFH demanded the return of the equipment from Mac Massey, of Massey Irrigation, who had purchased it from Pierson. Massey forwarded the letter to Pierson, who sent GFH a response on March 31, 1988. Pierson contended that he purchased the equipment from Texas Commerce Bank, and legally sold it. GFH joined Pierson in the suit on July 17, 1989.[2]

Pierson brings five points of error: (1) the judgment cannot be supported on appeal because the trial court failed to make findings of fact and conclusions of law; (2) the trial court erred in granting judgment for damages for conversion against Pierson because GFH made no demand on him for the return of the equipment and Pierson "otherwise had priority"; (3) the trial court erred in failing to find that Darby did not convert the property; (4) the statute of limitations barred this suit; and (5) the trial court erred in granting prejudgment interest beginning on March 10, 1988.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In point of error one, Pierson contends that he timely requested findings of fact and conclusions of law, which the trial court failed to make. Tex.R.Civ.P.Ann. 296 (Supp.1992). Because the court failed to make findings and conclusions, he argues, there are no findings of fact to support the judgment against him.

GFH responds: (1) Pierson improperly briefed this point because he cites no authorities on which he relies, Tex.R.App. P.Ann. 74(a) (Supp.1992); (2) Pierson made an untimely request not preserved by Tex.R.Civ.P.Ann. 306c (Supp.1992); and (3) Pierson failed to file the reminder required by Tex.R.Civ.P.Ann. 297 (Supp.1992) when

1. Appellee Drew Darby filed a brief adopting GFH's brief.

2. GFH originally sued Texas Commerce Bank and Sunwest Development Corporation and then added Pierson. GFH moved for, and was granted, a non-suit with respect to Texas Commerce Bank prior to final judgment. The final judgment provided that GFH take nothing against Sunwest.

the court failed timely to file findings and conclusions. With regard to GFH's concern about briefing, because Pierson cites the rule, we will assume that Pierson intended his authority to be the rule itself and his argument to be textual.

■■■ Because Pierson failed to do more than make an initial request, however, he did not properly request findings and conclusions. Tex.R.Civ.P.Ann. 297 (Supp. 1992). The record does not show, and Pierson does not argue on appeal, that he ever filed the "Notice of Past Due Findings of Fact and Conclusions of Law" that Rule 297 requires. Pierson's failure to file this reminder waives his right to complain of any error on appeal. *Las Vegas Pecan & Cattle Co., Inc. v. Zavala County,* 682 S.W.2d 254, 255 (Tex.1984). We must, therefore, affirm the judgment of the trial court on any legal theory that the evidence supports. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977). Without findings or conclusions, we presume the trial court resolved all questions of fact in support of the judgment. We review the record to determine if any evidence supports the judgment and concomitant implied findings, considering only the evidence favorable to the issue and disregarding all evidence or inferences to the contrary. *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.,* 565 S.W.2d 916, 918 (Tex.1978). We overrule point of error one.

## STATUTE OF LIMITATIONS

■■■ Pierson contends, in point of error four, that limitations barred this suit. A two-year statute of limitations applies to an action for conversion. Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (1986). Conversion is an act of dominion and control wrongfully exerted over another's personal property and inconsistent with that person's right in the property. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex.1971). An act of conversion does not have to be an actual manual taking but merely an act that is such active interference with the owner's right of property or control as to deprive him of its free use and enjoyment. *Id.* at 447; *American Surety*

*Co. v. Hill County,* 254 S.W. 241, 245–46 (Tex.Civ.App.1923), *aff'd,* 267 S.W. 265 (1924). Use of property by a person lawfully in possession becomes conversion if the use so departs from the conditions under which he received the property as to amount to an assertion of right inconsistent with that of the owner. *Snyder v. St. Paul Mercury Indem. Co.,* 191 S.W.2d 107, 110 (Tex.Civ.App.1945, writ ref'd w.o.m.). Although real property cannot be converted, when a fixture is severed and removed, it is re-impressed with its character as personalty and can be the subject of an action for conversion. *Lane v. Davis,* 337 S.W.2d 292 (Tex.Civ.App.1960, no writ).

■■■ In general, the period of limitations begins to run at the time of the conversion, the unlawful taking. *Republic Supply Co. v. French Oil Co.,* 392 S.W.2d 462, 464–65 (Tex.Civ.App.1965, no writ). When the original possession of property is not wrongful, however, the limitations period does not begin to run until the return of the property has been demanded and refused or until the person in possession has unequivocally exercised over the property acts of dominion inconsistent with the claims of the owner or the person entitled to possession. *Taylor v. Walston & Co., Inc.,* 502 S.W.2d 613, 615–16 (Tex.Civ.App. 1973, writ ref'd n.r.e.); *see also Rorie v. Dempsey–Tegeler & Co., Inc.* 515 S.W.2d 332, 333 (Tex.Civ.App.1974, no writ). Generally, the statute begins to run when notice of the adverse claim is made apparent to the owner. *Federal Electric Co. v. Johnson,* 187 S.W.2d 410, 411 (Tex.Civ. App.1945, writ dism'd w.o.j.). If the convertor took possession in subordination to the owner's title, the statute does not begin to run as long as the relationship of the parties continues or, if the contractual relation was repudiated, until the notice of the repudiation is conveyed to the owner, either directly or by adverse acts or claim of ownership so notorious that the owner may be presumed to have known thereof. *Id.; Williams v. Davenport,* 212 S.W. 675, 676 (Tex.Civ.App.1919, no writ) (where plaintiff loaned sawmill machinery to defendant, limitations did not begin to run until defen-

dant repudiated plaintiff's title and notice of the repudiation was brought home to plaintiff, and the mere fact that defendant gave a chattel mortgage on all of his sawmill machinery, which included that property loaned by plaintiff, was not notice to plaintiff even though the mortgage was filed of record, for plaintiff was not bound to make periodic searches of the records to discover whether defendant had repudiated).

■■■ Because we have no findings of fact, we presume disputed facts were found in support of the judgment. The trial court determined that limitations did not bar the suit. Therefore, the court impliedly found that the cause of action accrued within two years of filing suit. There are several possible acts that might be considered conversions. Pierson argues that the foreclosure was the act of conversion. However, it is logical that, as long as the irrigation system remained on the property, no significant interference with GFH's rights occurred because as long as it knew the location of the property, it could remove and reclaim the system, if it were to decide that there was no possibility of payment. Therefore, it is logical that the act of removing the system is what gave GFH a cause of action for conversion.[3] Because a finding that the removal of the system from the real property was the act that caused the cause of action for conversion to accrue would support the judgment, and there is evidence to support that finding, we assume such a finding was made. We overrule point of error four.

### DEMAND

In point of error two, Pierson contends that judgment for GFH is improper because no demand for the return of the equipment was made and he "otherwise had priority." GFH responds that the issue of a demand on Pierson was not raised in the record. GFH is correct. However, Pierson did plead that he was a purchaser for value under the Uniform Commercial Code (UCC) and there were no proper financing statements filed, from which he derives the argument that as a person who came into lawful possession of the property he was entitled to a demand on him and an opportunity to refuse to return the property before he could commit an act of conversion. *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex.Civ.App.1979, no writ).

Pierson contends that he gained lawful possession of the property because the "lease" actually was a sale with GFH retaining a security interest. Tex.Bus. & Com.Code Ann. § 9.102(b) (Tex.UCC) (1991). Because no proper filing of a financing statement was in place and the security interest was unperfected, he acquired an interest superior to GFH by his purchase from the party who foreclosed the real property. GFH contends that the lease was a true lease and that Pierson is not entitled to rely on Article 9 perfection concepts.[4]

■■■ Whether a transaction creates a lease or security interest is determined by the facts of each case. If a lease provides an option to purchase for no additional consideration or nominal additional consideration, a security interest has been created. *Horton v. Dental Capital Leasing Corp.*, 649 S.W.2d 655, 657 (Tex.App.1983, no writ); *Davis Bros. v. Misco Leasing, Inc.*, 508 S.W.2d 908, 912–13 (Tex.Civ.App. 1974, no writ). If the consideration is more than nominal, other factors are considered. *Davis*, 508 S.W.2d at 912–13. This lease provided an option to purchase at the fair market value at the end of the lease, with an elaborate provision for determining fair market value. Therefore, it is not automatically categorized as a lease.

---

**3.** There is evidence in the record to support treating the irrigation system as a fixture, i.e., it was referred to in the deed from Darby to Pierson as a fixture; GFH apparently attempted to treat it as a fixture and file a financing statement as a fixture filing in the real property records. Conversion of a fixture occurs on severance. *See Lane v. Davis*, 337 S.W.2d at 292.

**4.** A third party's knowledge of the true owner of leased goods is a widely acknowledged problem. The issue whether to include a filing requirement in the proposed UCC article 2A on leases "was central to its development and has been an area of great controversy." Daryl B. Robertson, *Report on UCC Article 2A*, 43 Baylor L.Rev. 235, 270 (1991).

Once again, given the lack of findings and conclusions, we imply findings that support the judgment. A finding that this agreement was a lease, and not a security agreement, would support the judgment. There is evidence in the record, such as the lease itself and testimony about the parties' intent, that supports such a finding. We therefore imply the finding that the agreement was a lease, that no UCC filing was necessary, and that no demand on Pierson was necessary. We overrule point of error two.

## CONVERSION BY DARBY

Pierson contends that the trial court erred in failing to find that Darby converted the system. GFH responds that no evidence was offered at trial that Darby had ever represented to Pierson that he had title to the system to convey or otherwise acted in a way inconsistent with GFH's ownership. In fact, Pierson operated the farm under an "Option to Buy" agreement, and actually sold the irrigation system even before acquiring title to the land from Darby. Again, we have no findings and conclusions. There is evidence in the record to support a finding that Darby did not convert the equipment because he never took any action that would have interfered with GFH's rights in the equipment; that is, he testified his intent was to transfer whatever he owned, which he did not understand necessarily to include GFH's irrigation system. We overrule point of error three.

## PRE–JUDGMENT INTEREST

Pierson contends, in point of error five, that the trial court erred in not awarding pre-judgment interest from January 14, 1990, 180 days after suit was filed, because pre-judgment interest runs from the date the defendant receives written notice of a claim or the day the suit is filed, and his notice was the filing of the lawsuit. Tex. Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(a) (1990). Pierson never raised this issue at the trial court and therefore waived any complaint. Tex.R.App.P.Ann. 52(a) (Pamph.1992); *Texas American Corp. v.*

*Woodbridge Joint Venture,* 809 S.W.2d 299, 305 (Tex.App.1991, no writ); *Brown v. State ex rel. Jarvis,* 808 S.W.2d 628, 633 (Tex.App.1991, writ denied). We overrule point of error five.

## CROSS–POINTS

In cross-point of error one, GFH contends that the trial court erred in not awarding costs and expenses. Pierson points out that the "costs" to which GFH refers are not taxable court costs, but the costs and expenses incurred in recovering the equipment; i.e., merely costs of litigation for which plaintiff was responsible. GFH does not contend that the expenses to which it refers are taxable court costs, rather GFH asserts that it is entitled to expenses and attorney's fees on equitable grounds. Similarly, in cross-point two, GFH argues that it was entitled to attorney's fees.

In general, attorney's fees and other litigation expenses incurred by a plaintiff in maintaining an action for conversion are not recoverable. *Donnelly v. Young,* 471 S.W.2d 888, 891 (Tex.Civ.App. 1971, writ ref'd n.r.e.). We do not find that any of the equitable reasons GFH advances allowing recovery of attorney's fees persuasive. The common fund doctrine applies to awarding a plaintiff attorney's fees when that plaintiff's recovery also results in a recovery for other plaintiffs. *See Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795 (Tex. 1974). Appellant's theory that a "wrongful act" occurred and therefore he should recover attorney's fees proves too much. The act of conversion is the wrongful act. If this were the type of wrongful act intended by this principle, then attorney's fees would generally be recoverable in conversion cases, which they are not. *Donnelly,* 471 S.W.2d at 891. We overrule cross-points one and two.

In cross-point of error three, GFH contends that Pierson's appeal was taken for delay and without sufficient cause and GFH should receive damages. Tex.R.App. P.Ann. 84 (Supp.1992). After reviewing the record, we cannot conclude that there was insufficient cause for appeal and that

the appeal was taken solely for delay. *See Gaines v. Frawley*, 739 S.W.2d 950, 956–57 (Tex.App.1987, no writ). We overrule the cross-point.

Having overruled all points and cross-points, we affirm the judgment of the trial court.