Novella Iris BURD and L.W. Jones, Appellants,

v.

Thomas W. ARMISTEAD and Danial C. Martin, Appellees.

No. 01–96–00538–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 26, 1998.

Rehearing Overruled July 31, 1998.

---

Wes Griggs, West Columbia, for Appellants.

J. Randolph Burton, Houston, Carleton A. Davis, Elizabeth G. Bloch, Austin, for Appellees.

Before COHEN, ANDELL and NUCHIA, JJ.

### OPINION

ANDELL, Justice.

The appellants (original owners) appeal a summary judgment granted in favor of the appellees (purchasers). We affirm.

### Background

Columbia–Brazoria Independent School District sued to collect delinquent taxes on the original owners' land. The court ordered the land sold, and the purchasers purchased it at a tax sale for $5,120.68.

Over a period of several months, the purchasers paid $1,443.39 in back taxes on the property, as well as, $20 in recordation fees, $416.25 to remove appellant Jones from the property, $1,125 to remove trash, $3,578.43 to replace the existing septic system that did not comply with state and local regulations, and $7,108.69 to replace and paint fascia boards, treat the building for termites, replace the roof and carpet, and repair the water pipes, air-conditioning unit, and the electrical system.

The purchasers sent letters to notify the original owners of the mounting renovation costs and the amount the purchasers would accept for redemption. In response to the first letter, the original owners requested an itemization, then tendered a $6400.85 check and notified the purchasers that they would not pay some of the costs because they were not authorized by statute. The purchasers did not accept the check.

For the next year, the original owners did not contact the purchasers. Two days before the statutory redemption deadline, the original owners gave the Brazoria County Tax Assessor–Collector an affidavit that stated

the amount owed was in dispute.[1] A tax office clerk calculated the amount owed at $9,166.82, which the original owners paid. In return, the clerk issued a receipt for redemption of the properties.

The purchasers sued for a declaratory judgment that the redemption was not valid. The original owners filed a counterclaim seeking declaratory judgment in support of the redemption. Both parties moved for summary judgment. The court granted the purchasers' motion, denied the original owners' cause of action, and declared the redemption not valid.

■ In points of error one and two, the original owners assert the trial court erred in granting the purchasers' motion for summary judgment, and in denying the original owners' motion for summary judgment.[2]

### Standard of Review

■ When both parties move for summary judgment, the nonprevailing party may appeal both the prevailing party's motion as well as its own. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Each party

1. Former Tex. Tax Code Ann. § 34.21(a) established the following procedure for redemption when the parties could not agree on the amount due:

> If the owner of the real property makes an affidavit that the owner has made diligent search in the county in which the property is located for the purchaser at the tax sale or for the purchaser at resale, and has failed to find the purchaser, that the purchaser is not a resident of the county in which the property is located, that the owner and the purchaser cannot agree on the amount of redemption money due, or that the purchaser refuses to give the owner a quitclaim deed to the property, the owner may redeem the land by paying the required amount as prescribed by this section to the assessor-collector for the county in which the property described has been redeemed. The assessor-collector receiving the payment shall give the owner a signed receipt witnessed by two persons. The receipt, when recorded, is notice to all persons that the property described has been redeemed. The assessor-collector shall on demand pay the money received by the assessor-collector to the purchaser.

See Act of May 18, 1993, 73rd Leg., R.S., ch. 349, § 3, sec. 34.21(a), 1993 Tex. Gen. Laws 1559, 1559, *repealed by* Act of May 23, 1997, 75th Leg., R.S., ch. 906, § 11, sec. 34.21(e), 1997 Tex. Gen.

Laws 2854, 2856. The 75th legislature altered section 34.21(a) slightly, moved it to § 34.21(e), and added a definition of costs at § 34.21(i). *See* Act of May 23, 1997, 75th Leg., R.S., ch. 906, § 11, sec. 34.21(e), 1997 Tex. Gen. Laws 2854, 2856 (former section 34.21(e)), *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 1111, § 6, sec. 34.21(e), 1997 Tex. Gen. Laws 4246, 4247. Three days later, the legislature repealed the new § 34.21(e) and replaced it with a definition of costs. *See* Act of May 26, 1997, 75th Leg., R.S., ch. 1111, § 6, sec. 34.21(e), 1997 Tex. Gen. Laws 4246, 4247. As a result, § 34.21 has two definitions of costs, and the provisions of former § 34.21(a) have been rescinded. For further discussion, see note 3, *infra,* and accompanying text.

2. The original owners filed a counterclaim and petition for declaratory judgment on the day of the summary judgment hearing. In a third point of error, the original owners contend the court wrongly included those causes of action in the summary judgment, because Texas Rule of Civil Procedure 245 requires 45 days notice before a trial setting. Because both claims only addressed matters contained in motions already before the court, we find the court neither erred nor abused its discretion by disposing of both causes of action through the summary judgment. We overrule the appellants' third point of error.

must carry its own burden as the movant and, in response to the other party's motion, as the nonmovant. *James v. Hitchcock ISD*, 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). As we review each of the motions for summary judgment, we must indulge all reasonable inferences and resolve all doubts in favor of the nonmovant. *University of Tex. Health Science Ctr. v. Big Train Carpet, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987). When, as here, a court's order does not specify the grounds relied on for its ruling, we will affirm the summary judgment if any of the theories advanced are meritorious. *See Rogers v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex.1989); *Brown v. Cain Chemical, Inc.*, 837 S.W.2d 239, 242 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

## Redemption

An owner seeking to exercise his right of redemption under the Tax Code must pay a statutorily prescribed amount within two years of the tax sale, or the right to redeem expires. Tex. Tax Code Ann. § 34.21. When redeeming within the first year after sale, the original owner must pay 125 percent of the purchase price, taxes, penalties, interests, and costs incurred by the purchaser. *See id.* When redeeming within the second year after sale, the original owner must pay 150 percent of the purchase price, taxes, penalties, interests, and costs incurred by the purchaser. *See id.* Nonredemption within two years of the tax sale ripens title to the property in favor of the purchaser or its assigns. *Id.; State v. Moak*, 146 Tex. 322, 207 S.W.2d 894, 896–97 (1948).

The original owners tendered $9,166.82 to the tax assessor two days before their redemption deadline. They concede that the tax assessor miscalculated the amount due, and assert the proper calculation would be $9,864.25. They contend that, because their $697.44 shortfall was inadvertent and *de minimis*, redemption was valid. In the alternative, they contend they have substantially complied with the statute, thereby affecting a valid redemption. They add that they are willing to pay the shortfall amount.

The purchasers assert the original owners' $9,864.25 calculation ignores numerous items of costs entirely. They note that the statute explicitly includes costs in the calculation, and allege they gave the original owners itemized notice of statutorily authorized costs. Accordingly, they claim the original owners' tender was nowhere near the required amount—which the purchasers claim to be $29,175.06. Because they assert the original owners knowingly disregarded these costs and even underpaid the amount that would have been due exclusive of costs, the purchasers contend the original owners' underpayment was neither inadvertent, *de minimis*, nor in substantial compliance with the statute.

## Definition of "Costs"

■ At the time the original owners attempted redemption, the statute did not expressly define costs. Neither party has cited, and we are unable to find, cases that define costs in the redemption context. However, while the case was pending before this Court, the legislature defined costs.[3]

Tax Code section 34.21(e)(2) reads:

> (3) discharge of mowing, cleaning, or demolition liens against the property that secure expenses incurred by a municipality;
> (4) dues, assessments for maintenance, or liens provided by recorded restrictive covenants affecting the property and payable to a property owner's association; and
> (5) standby fees payable to a water district, fresh water supply district, or other municipality as authorized by law.

Tex. Tax Code Ann. § 34.21(i) (Vernon Supp.1998). Because the definition in section 34.21(i) differs from that in section 34.21(e)(2), and because nothing in the statute indicates when one should be used rather than the other, we find the definitions are irreconcilable. When amendments are

---

**3.** Section 34.21 of the Tax Code actually contains conflicting definitions of the word "costs." *Compare* Tex. Tax Code Ann. § 34.21(e)(2) (Vernon Supp.1998), *with* Tex. Tax Code Ann. § 34.21(i) (Vernon Supp.1998). Section 34.21(i) reads:

(i) In this section, "costs" is defined to include all those amounts reasonably expended by a purchaser or taxing unit in the maintenance, preservation, and safekeeping of the property, including but not limited to:

(1) insurance against fire, flood, and other hazards;
(2) repairs and improvements required by local ordinance, building code, or by the terms of any existing lease of the property, whether written or oral;

"Costs" includes the amount reasonably spent by the purchaser for the maintenance, preservation, and safekeeping of the property, including the cost of:

(A) property insurance;

(B) repairs or improvements required by a local ordinance or building code or by a lease of the property in effect on the date of the sale;

(C) discharging a lien imposed by a municipality to secure expenses incurred by the municipality in remedying a health or safety hazard on the property;

(D) dues or assessments for maintenance paid to a property owners' association under a recorded restrictive covenant to which the property is subject; and

(E) impact or standby fees imposed under the Local Government Code or Water Code and paid to a political subdivision.

TEX. TAX CODE ANN. § 34.21(e)(2) (Vernon Supp.1998).

■ Generally, in the absence of any specific language to the contrary, a statute will not be applied retroactively, even when there is no constitutional impediment against it. *Lubbock Indep. School Dist. v. Bradley,* 579 S.W.2d 78, 80 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). "Laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws." *Holder v. Wood,* 714 S.W.2d 318, 319 (Tex.1986). However, changes in the statutes merely affecting remedies or procedures may be applied retroactively. *Id.* Though section 34.21(e)(2) did not exist at the time the cause of action accrued, it does not change the rights of the parties. It merely clarifies what was an unanswered question in the statute as to remedy.

■ We hold the purchasers are entitled to 150 percent compensation for costs defined in section 34.21(e)(2).

■ The original owners stipulated that, among their costs, the purchasers requested compensation for the cost of $3,578.43 to replace a septic system that did not comply with state and local regulations. The purchasers offered the system installer's affidavit that the repairs were required by law. The original owners offered no controverting evidence. This evidence conclusively proved a statutory cost. *See* TEX. TAX CODE ANN. § 34.21(e)(2) (Vernon Supp.1998).

■ The amount required to redeem the property necessarily included 150 percent of the $3,578.43 cost needed to bring the septic system into compliance with law. Thus, even if we exclude disputed cost items such as $416.25 to remove appellant Jones from the property, $1125 to remove trash, and $7108.69 for various repairs, the appellants still owed at least the following costs: $5120.68 (purchase price) + $1443.39 (back taxes) + $20 (recording fee) + $3578.43 (septic system brought into compliance with law) = $10,162.50 × 150 percent (for redemption during second year after purchase) = $15,243.75.

Because including septic system repair costs means the original owners' tender of $9,166.82 did not come close to compensating the purchasers, we find neither the doctrine of *de minimis non curat lex,* nor the doctrine of substantial compliance justifies the original owners' tender.

Accordingly we overrule points of error one and two, and affirm.

COHEN, J., concurring.

irreconcilable, the latest in date of enactment prevails. *See* TEX. GOV'T CODE ANN. § 311.025 (Vernon 1988). Because the legislature enacted § 34.21(e)(2) three days after it enacted § 34.21(i), we find the definition as provided in § 34.21(e)(2) is the intended definition. *Com-* *pare* Act of May 26, 1997, 75th Leg., R.S., ch. 1111, § 6, sec. 34.21(e), 1997 Tex. Gen. Laws 4246, 4247 (enacting § 34.21(e)(2)), *with* Act of Act of May 23, 1997, 75th Leg., R.S., ch. 906, § 11, sec. 34.21(e), 1997 Tex. Gen. Laws 2854, 2856 (enacting § 34.21(i)).