NUMBER 13-01-468-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG





JAMES H. LEACH AND BETTY S. LEACH,                          Appellants,

v.

DAN CONNER, AS TRUSTEE OF
THE CONNER FAMILY TRUST,                                            Appellee.




On appeal from the 23rd District Court
of Wharton County, Texas.




MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Castillo
Memorandum Opinion by Justice Castillo

         This is a suit in equity. Appellants James H. Leach and Betty Leach appeal
imposition of a constructive trust in favor of appellee Dan Conner, Trustee of the
Conner Family Trust. The Leaches bought a piece of commercial property at a tax
foreclosure sale. The Trust, as the delinquent taxpayer, redeemed the property. The
Trust claimed it was entitled to a prorated portion of advance rent collected by the
Leaches before the Trust redeemed the property. The trial court agreed. As modified,
we affirm. 
 I. RELEVANT FACTS AND PROCEDURAL HISTORY
A. The Lawsuit
         The Trust’s live pleading at the time of trial sought: (1) damages for conversion
of its prorated portion of rent paid to the Leaches by the tenant, H&R
Block of Houston, in the amount of $7,157.26 plus pre-judgment interest from
June 22, 2000; (2) establishment of a constructive trust over its portion of the rent;
(3) a declaratory judgment that it “exercised its right of redemption as required under
the law” and “that all rental collected by Defendant from the date the right of
redemption was exercised to the end of the aforementioned lease is the property of
Plaintiff”; and (4) attorney fees under section 37.009 of the civil practice and remedies
code. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997). The Trust also
claimed that the Leaches were unjustly enriched by their retention of “a benefit as the
result of fraud and/or the taking of an undue advantage” in keeping all of H&R Block’s
advance rent. 
 B. The Testimony at Trial
1. The Tax Sale
         The parties agree on the facts but disagree about their legal effect. The Conner
Family Trust owned commercial property in El Campo, Texas. The Trust became
delinquent in paying property taxes assessed by the Wharton County tax assessor-collector. On April 18, 2000, the Leaches bought the property at a sheriff’s sale
following execution of the resulting judgment for the past-due taxes. The sheriff’s tax
deed shows that the Leaches paid $5,055.00 and took title subject to “the owner’s
right to redeem the same in the manner and within the time prescribed by
Section 34.21 of the Property Tax Code of the State of Texas.”


 
2. The Lease
         Ten days later, on April 28, 2000, the Leaches signed a commercial lease
agreement with an existing tenant in the building. H&R Block had rented the property
from the Trust for a number of years under rental terms that ran from May 1 to
April 30 annually. The lease between H&R Block and the Leaches provided for: (1) a
term from May 1, 2000 to April 30, 2001; (2) rent in the amount of $8,400.00 to be
paid ”in advance, which shall be rent for the first month of the lease term”; and
(3) eleven months of free rent (called the “free rent period”). The free rent period
began on June 1, 2000 and expired on the last day of April 2001. As required by the
lease, H&R Block paid the Leaches $8,400.00 by check dated April 27, 2000. 
3. The Demand
         On May 1, 2000, three days after the Leaches and H&R Block signed the new
lease agreement, Conner contacted H&R Block “to see where the rent was.” He
learned of the tax foreclosure and the new lease with the Leaches. Within
the first month of the lease (to which the $8,400.00 rent payment applied), on
May 18, 2000, the Trust notified the Leaches in writing of its intention to exercise its
right of redemption under article 34.21 of the tax code then in effect. See Tex. Tax
Code Ann. § 34.21 (Vernon Supp. 2000).


 In addition, the Trust informed the
Leaches: (1) they were entitled to recover, and the Trust was prepared to pay, the
amount paid at foreclosure plus any other expenses, a redemption premium of twenty-five percent, and any filing fees; (2) article 34.21(i) required them to itemize and
present their expenditures; (3) they were entitled to a prorated portion of the
$8,400.00 rent they received from H&R Block until the Trust redeemed the property;
and (4) once the Trust redeemed the property, they were required to sign a quitclaim
deed. See Tex. Tax Code Ann. § 34.21(f). The letter asked the Leaches to provide
an itemization of their expenses and computation of the prorated rent. A second letter
to the same effect followed on June 1, 2000. The Leaches did not respond. 
4. The Tendered Redemption
         On June 22, 2000, the Trust tendered to the Leaches a check in the amount
of $6,327.75, representing the $5,055.00 paid by the Leaches at the sheriff’s sale,
twenty-five percent of that amount ($1,263.75), and a $9.00 filing fee. See Tex. Tax
Code Ann. § 34.21(i). The Leaches do not contend that the Trust did not tender the
correct redemption amount. The letter enclosed a quitclaim deed for the Leaches to
sign and return.


 
         The June 22 letter also calculated the Trust’s “prorated share of the rent which
you have collected from H&R Block. The rental begins on May 1st and ends on
April 30th. The annual rental is $8,400.00. Your share of the rent is $1,242.72 [sic]
for 54 days @ $23.0137, and your required return is $7,157.26.” The letter
demanded payment of $7,157.26 and execution of the quitclaim deed. By letter dated
July 7, 2000, the Trust enclosed a copy of the June 22 letter and demanded that the
Leaches reconvey the property to the Trust. It also asked for return of the balance of
the rent the Leaches had collected from H&R Block. 
5. The Redemption
         On July 31, 2000, Conner signed an affidavit that the Trust tried to redeem the
property by seeking an agreement with the Leaches. See Tex. Tax Code
Ann. § 34.21(f). The affidavit attested that the Leaches did not respond to any of
the four letters sent by the Trust regarding the redemption and refused to sign a
quitclaim deed as required by law. By check dated August 3, 2000, the Trust
tendered the redemption amount of $6,327.75 to the Wharton County tax assessor-collector. See id. In turn, the tax assessor prepared a redemption receipt on
August 4, 2000. See id. By letter dated August 14, 2000, the tax assessor-collector
notified the Leaches of the Trust’s redemption of the property. The Leaches do not
contend that the Trust did not redeem the property timely. Nonetheless, they did not
remit any portion of the H&R Block rental proceeds to the Trust. The Trust filed suit
for its claimed prorated share of the rent. 
C. The Judgment
         The judgment recites that the trial court found “in favor of Plaintiff, Dan Conner,
as Trustee of Conner Family Trust, and against Defendants, James H. Leach and
Betty S. Leach, in the amount of $7,700.00 (Seven Thousand Seven Hundred and
No/100 Dollars).” The trial court did not award the Trust pre-judgment interest or
attorney fees.


 It taxed the costs to the party who incurred them. On timely request
by the Leaches, the trial court signed findings of fact and conclusions of law. See
Tex. R. Civ. P. 296. 
D. The Findings of Fact and Conclusions of Law
         The trial court’s findings of fact stated: 
A.At a Sheriff tax sale conducted on April 18, 2000, the
Defendants, James H. Leach and Betty S. Leach purchased a commercial
building located in El Campo and owned by Plaintiff, Conner Family Trust. 

B.That the conveyance was subject to Plaintiff’s right of
redemption under the Texas Tax Code Section 34.21.
 
C.Ten (10) days after the purchase, the Defendants entered
into a lease with H&R Block. The lease calls for rent of $8,400.00 to be
paid in the first month of the lease term which runs from May 1, 2000
through April 30, 2001, and that the eleven remaining months are the
“free rent period.” 
 
D.That subsequent to the lease on June 22, 2000, Plaintiff
notified Defendants in writing of [sic] intention to exercise their [sic] right
of redemption and that Plaintiff properly enclosed an Escrow check for
the redemption amount as required by the Texas Tax Code
Section 34.21.
 
E.Defendant [sic] held the property, subject to Plaintiff’s right
of redemption for fifty-four (54) days. Rental on the property, according
to the terms of the lease with H&R Block, accrued at $23.0137 per day. 
Therefore, the prorated amount of rental due to Defendant [sic] was
$1,242.74, and the prorated amount of rental owed to Plaintiff equals
$7,157.26. 
 
F.Due to Defendant’s [sic] refusal to acknowledge Plaintiff’s
exercise of it’s [sic] right [sic] redemption, the Plaintiff was required to
execute an Affidavit as required by the Tax Code and tender the
redemption amount to the Wharton County Tax Assessor-Collector on
August 3, 2000. 
 
G.Defendants refused to acknowledge Plaintiff’s request and
return the prorated portion of the rent paid by H&R Block according to
the lease terms. 

         The trial court’s conclusions of law stated:
 
A.The imposition of Constructive Trust is proper under this set
of facts. Defendants have unjustly enriched themselves by drafting the
lease to make all rent on the property apply to the first month of the
lease term. Defendant’s [sic] intent to bypass Plaintiff’s beneficial
interest in the property is unconscionable conduct. The amount held in
constructive trust by Defendants equals $7,157.26. 
 
B.Under Section 34.21(h) of the Texas Tax Code, the
Defendant’s [sic] right to receive benefits is only present “while the right
to redemption exists.” To allow the Defendant’s [sic] to make the entire
rental payment apply to the first month of the lease term would
completely defeat the right of redemption contained in Section 34.21 of
the Texas Tax Code because Plaintiff would have no rights to the
property until the entire lease has expired. 
 
C.Under Section 24 of the Texas Property Code, since H&R
Block entered the property with the express consent of the Defendants,
who had legal title at the time the lease was signed, they have clean
hands and the Plaintiff can only look to the Defendants for redress. 
 
D.Defendants failed to disclose facts in an effort to defraud
Plaintiff, and therefore, Plaintiff should be awarded Exemplary damages
in the amount of $42.74. 

         The Leaches did not request supplemental or amended findings or conclusions. 
See Tex. R. Civ. P. 298. This appeal ensued. 
II. THE ISSUES ON APPEAL
         In issues one, two, and three, the Leaches assert that the Trust is not entitled
to: (1) any portion of the rent received from H&R Block; (2) recovery under either a
conversion theory or an unjust enrichment theory; or (3) a constructive trust over the
prorated rent. In issues four and five, the Leaches alternatively challenge the legal and
factual sufficiency of the evidence to support: (1) a judgment for $7,700.00; and
(2) the trial court’s award of exemplary damages. 
III. EQUITABLE PRINCIPLES
         A party seeking equitable relief must bring the case within the rule that
the relief sought will not operate inequitably on the opposing party. Kress
v. Soules, 261 S.W.2d 703, 704 (Tex. 1953). A trial court sitting in equity
asks one question:  “Which decision is more equitable?” See English v. Jones,
274 S.W.2d 666, 669 (Tex. 1955). “No rules can be prescribed and no attempt
should be made to formulate rules for the measurement of conduct by courts of
equity. . . .” Fitz-Gerald v. Hull, 237 S.W.2d 256, 264 (Tex. 1951) (citing MacDonald
v. Follett, 180 S.W.2d 334, 337 (Tex. 1944)). Specifically, “[i]n conversion cases,
the trial court must be given the discretion required to fashion an equitable remedy.” 
Storms v. Reid, 691 S.W.2d 73, 75 (Tex. App.–Dallas 1985, no writ). 
IV. LEGAL ANALYSIS
         Relying on section 34.21(h) of the tax code, the Leaches first maintain that the
Trust is not entitled to any portion of the $8,400.00 because, as owners of the
property, they collected the rent before the Trust exercised its redemption right. See
Tex. Tax Code Ann. § 34.21(h). The Trust responds that the Leaches acquired the
property by sheriff’s deed expressly subject to the Trust’s right of redemption. The
Leaches further argue that rents received by one party are not prorated when the
leased property is later transferred to a third party. The Trust counters that equity
does not permit the Leaches to draft a lease to subvert the Trust’s right to receive rent
on the property after redemption. The Leaches maintain that we must look to the
letter of the lease agreement to determine the rights of the parties. The Trust urges
us to look to the substance of the transaction in reviewing the equitable remedy
fashioned by the trial court. 
         In their second issue, the Leaches assert that the Trust is not entitled to recover
under either a conversion theory or an unjust-enrichment theory. They argue: (1) they
did not convert any portion of the rental proceeds because the Trust did not own the
property at the time the Leaches collected the rent; (2) money is not subject to
conversion except under circumstances not applicable to this case; (3) real property
is not subject to conversion; and (4) unjust enrichment requires a finding of fraud,
duress, or the taking of undue advantage, none of which occurred because the
Leaches merely exercised their legal right as owners to lease the property under terms
agreeable to lessor and lessee. They point out that the Trust is not a party to the lease
agreement. As a result, the Leaches assert in their third issue, the Trust is not entitled
to a constructive trust over the prorated rent. 
         We interpret the Leaches’ first and second issues as challenges to the trial
court’s conclusions of law. We turn to the law applicable to the respective redemption
right of the Trust and competing possessory interest of the Leaches. 
A. THE LAW APPLICABLE TO THE RESPECTIVE RIGHTS OF THE PARTIES
1. Standards of Review - Conclusions of Law
         We review a trial court’s challenged conclusions of law as legal questions. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). Accordingly,
we apply a de novo standard. In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994);
Asai v. Vanco Insulation Abatement, 932 S.W.2d 118, 121 (Tex. App.–El
Paso 1996, no pet.). An appellant may not challenge a trial court’s conclusions of law
for factual sufficiency. BMC Software, 83 S.W.3d at 794. However, we determine
the correctness of the trial court’s legal conclusions drawn from the facts. Id. If we
determine that a conclusion of law is not correct, but the trial court rendered the
proper judgment, the incorrect conclusion of law does not require reversal. Id. Thus,
in reviewing challenges to a trial court’s conclusions of law, we
sustain the judgment on any legal theory supported by the evidence. In re
A.M., 101 S.W.3d 480, 484 (Tex. App.–Corpus Christi 2002, no pet.). We do not
reverse an incorrect conclusion of law if the trial court’s findings of fact support a
correct legal theory. Id. at 485. 
2. Redemption and Conversion
a. The Redemption Provisions of the Tax Code
         The owner of commercial real property sold at a tax sale may redeem the
property by paying the purchaser: (1) the amount paid for the property; (2) the deed
recording fee; (3) the amount paid by the purchaser in taxes, penalties, interest, and
costs on the property; and (4) a redemption premium of twenty-five percent. Tex. Tax
Code Ann. § 34.21(c), (e). However, “[t]he right of redemption does not grant or
reserve in the former owner of the real property the right to use or possession of the
property, or to receive rents, income, or other benefits from the property while the
right of redemption exists.” Tex. Tax Code Ann. § 34.21(h). 
         The redemption statute provides that the prior owner redeems title by paying
the required redemption amount before the end of the redemption period. State v.
Moak, 207 S.W.2d 894, 896 (Tex. 1948). Timely redemption extinguishes the rights
of the tax-sale purchaser. Id. In the absence of timely tender of the correct
redemption amount, the rights of those entitled to redeem “automatically and
instantly” expire at the end of the redemption period. Id. at 896-97. On the other
hand, title does not ripen in favor of the tax-sale purchaser until: (1) the statutory
period expires; and (2) no redemption occurs. Id. at 897; Burd v. Armistead,
982 S.W.2d 31, 34 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). 
         b. The Law of Conversion
         Conversion is an act of dominion and control wrongfully exerted over another’s
personal property inconsistent with that person’s right in the property. Pierson v. GFH
Fin. Servs. Corp., 829 S.W.2d 311, 314 (Tex. App.–Austin 1992, no writ) (per
curiam). An act of conversion does not have to be an actual manual taking. Id. 
Conversion also occurs when the act is such “an active interference with the owner’s
right of property or control as to deprive the owner of its free use and enjoyment.” 
Id. Use of property by a person lawfully in possession becomes conversion
if the use so departs from the conditions under which the possessor received
the property as to amount to an assertion of right inconsistent with that of the
owner.  Id. Thus, the elements of conversion are: (1) the plaintiff owned, had legal
possession of, or was entitled to possession of the property; (2) the
defendant assumed and exercised dominion and control over the property in an
unlawful and unauthorized manner, to the exclusion of and inconsistent with the
plaintiff’s rights; and (3) the defendant refused the plaintiff’s demand for the
return of the property. Huffmeyer v. Mann, 49 S.W.3d 554, 558 (Tex. App.–Corpus
Christi 2001, no pet.).  Wrongful intent is not an element of conversion. Thomas v.
McNair, 882 S.W.2d 870, 884 (Tex. App.–Corpus Christi 1994, no writ). 
Rental proceeds are subject to conversion. Hoenig v. Tex. Commerce Bank,
N.A., 939 S.W.2d 656, 664 (Tex. App.–San Antonio 1996, no writ). 
         While an absolute refusal to transfer possession to one entitled to it generally
constitutes conversion, a refusal to deliver property on request may be justified
if the reason is to permit investigation of the rights of the parties. Edmunds v.
Sanders, 2 S.W.3d 697, 703-04 (Tex. App.–El Paso 1999, pet. denied). No
conversion results if the possessor refuses in good faith so as to permit resolution of
a doubtful matter. Id. at 704. The refusal must be reasonable, justifiable, and have
a legal foundation. Hofland v. Elgin-Butler Brick Co., 834 S.W.2d 409, 413 (Tex.
App.–Corpus Christi 1992, no writ). Any basis for refusing to turn over the
property not mentioned at the time of the refusal is lost. Sanders, 2 S.W.3d
at 704; Hofland, 834 S.W.2d at 413. In that event, the possessor may not later raise
the reason in defense to a conversion action. Sanders, 2 S.W.3d at 704; Hofland,
834 S.W.2d at 413. 
                  3. Application of the Law of Redemption and Conversion to the Facts
         We read the Leaches’ first issue as a challenge to the trial court’s conclusion of
law that the provision in the H&R Block lease that applied the entire annual rental
payment to the first month of the lease term operated to defeat the Trust’s right to
rental proceeds after redemption. The Leaches have not challenged the findings of
fact that support the trial court’s legal conclusion. Nor do they dispute that they
acquired the property knowing that the Trust could extinguish their rights by exercising
its right of redemption. See Moak, 207 S.W.2d at 896. In their brief, the Leaches
concede that the rental agreement was “a one-year lease for which all of the rent
[was] due in advance, rather than on a monthly basis.” Nonetheless, the Leaches
entered into the lease knowing that their title to the property would not ripen until two
events occurred: (1) the statutory period expired; and (2) the Trust did not redeem the
property. See Moak, 207 S.W.2d at 897; see also Burd, 982 S.W.2d at 34. 
         The Trust’s statutory right of redemption, if not an actual ownership interest,
was a property right conferred by the laws of the State of Texas. We find that the
conditions under which the Leaches took the property were: (1) the property was
subject to a lease which, although nearing the end of its annual term, was still in effect
and subject to renewal; and (2) the Leaches’ rights were subject to the Trust’s
statutory right of redemption. See Pierson, 829 S.W.2d at 314. Further, the record
contains no evidence that the Leaches responded to the Trust’s demands for a
prorated portion of the rent by asserting a good-faith refusal for not turning over the
property. We hold that the Leaches may not claim now, in defense to the Trust’s suit
for conversion, that their refusal was based on any doubt regarding the
Trust’s entitlement to the prorated rent or their duty to turn over the proceeds. See
Sanders, 2 S.W.3d at 704; see also Hofland, 834 S.W.2d at 413. 
         Accordingly, we find that the Leaches’ conduct in: (1) entering into a year-long
lease with the Trust’s existing tenant; (2) applying the annual rent to the first month;
and (3) contracting for the remaining eleven months of the lease term to be rent free,
if not an actual taking, so departed from the conditions under which the Leaches
received the property as to amount to an assertion of right inconsistent with the
Trust’s right of redemption. See Pierson, 829 S.W.2d at 314. Accordingly, we hold
that the trial court’s findings of fact support the legal theory of conversion. See id. 
We hold that the trial court’s conclusion of law is sustainable on a legal theory
supported by the evidence. See In re A.M., 101 S.W.3d at 484. Thus, we do not
reach the Leaches’ contention that the evidence does not support the judgment under
an unjust-enrichment theory. See Tex. R. App. P. 47.1. 
         We overrule the Leaches’ first and second issues. We next address the law of
constructive trusts. 
B. Constructive Trusts
         We read the Leaches’ third issue as challenging the trial court’s exercise of its
equitable power in imposing a constructive trust over the prorated rent. We again turn
to the applicable standard of review. 

1. Standard of Review - Constructive Trusts
         A constructive trust is an equitable remedy. Bocanegra v. Aetna Life Ins.
Co., 605 S.W.2d 848, 851 (Tex. 1980). We review a trial court’s decisions when
sitting as a court of equity under an abuse-of-discretion standard. See Welder v.
Green, 985 S.W.2d 170, 180 (Tex. App.–Corpus Christi 1998, pet. denied) (“Matters
of equity are addressed to the trial court’s discretion.”); see also McNair, 882 S.W.2d
at 881 (finding no abuse of discretion in trial court’s order of sale and partition). 
Specifically, the imposition of a constructive trust is an equitable matter within the
discretion of the trial court. Carr v. Weiss, 984 S.W.2d 753, 767 (Tex.
App.–Amarillo 1999, pet. denied). In matters of equity, we find abuse of discretion
only if the trial court ruled: (1) arbitrarily, unreasonably, or without regard to guiding
legal principles; or (2) without supporting evidence. Welder, 985 S.W.2d at 180. 
2. The Law of Constructive Trusts
         Section 160 of the Restatement (First) of Restitution provides:
Where a person holding title to property is subject to an equitable duty
to convey it to another on the ground that he would be unjustly enriched
if he were permitted to retain it, a constructive trust arises. 
Restatement (First) of Restitution § 160 (1937); Fitz-Gerald, 237 S.W.2d at 262. 
Equitable principles govern the creation of a constructive trust: 
Constructive trusts include all those instances in which a trust is raised
by the doctrines of equity for the purpose of working out justice in the
most efficient manner, where there is no intention of the parties to create
such a relation, and in most cases contrary to the intention of the one
holding the legal title, and where there is no express or implied, written
or verbal, declaration of the trust. They arise when the legal title to
property is obtained by a person in violation, express or implied, of some
duty owed to the one who is equitably entitled, and when the property
thus obtained is held in hostility to his beneficial rights of ownership. As
the trusts of this class are imposed by equity, contrary to the trustee’s
intention and will, upon property in his hands, they are often termed
trusts in invitum; and this phrase furnishes a criterion generally accurate
and sufficient for determining what trusts are truly ‘constructive.’ An
exhaustive analysis would show. . . in all the remaining instances there
is, latent perhaps, but none the less real, the necessary element of that
unconscientious conduct which equity calls constructive fraud. 

Fitz-Gerald, 237 S.W.2d at 262 (quoting 4 John Norton Pomeroy, Pomeroy’s Equity
Jurisprudence § 1044 (5th ed. 1941)). 
         Texas law recognizes that constructive trusts are remedial in character and have
the broad function of redressing wrong or unjust enrichment in keeping with the basic
principles of equity and justice. Ginther v. Taub, 675 S.W.2d 724, 728 (Tex. 1984). 
We agree with the Leaches that a constructive trust is an equitable
remedy that is imposed upon property obtained by fraudulent means. Thigpen v.
Locke, 363 S.W.2d 247, 250 (Tex. 1962). However, actual fraud is not the only
conduct that may result in the exercise of a trial court’s equitable power to impose a
constructive trust: 
In general, whenever the legal title to property, real or personal, has been
obtained through actual fraud, misrepresentations, concealments, or
through undue influence, duress, taking advantage of one’s weakness or
necessities, or through any other similar means or under any other similar
circumstances which render it unconscientious for the holder of the legal
title to retain and enjoy the beneficial interest, equity impresses a
constructive trust on the property thus acquired in favor of the one who
is truly and equitably entitled to the same, although he may never
perhaps have had any legal estate therein; and a court of equity has
jurisdiction to reach the property either in the hands of the original
wrongdoer, or in the hands of any subsequent holder, until a purchaser
of it in good faith and without notice acquires a higher right, and takes
the property relieved from the trust. The forms and variaties [sic] of
these trusts, which are termed ex maleficio or ex delicto, are practically
without limit. The principle is applied wherever it is necessary for the
obtaining of complete justice, although the law may also give the remedy
of damages against the wrong-doer. 
Fitz-Gerald, 237 S.W.2d at 262-63 (quoting 4 Pomeroy’s Equity Jurisprudence
§ 1053); see Castano v. Wells Fargo Bank, N.A., 82 S.W.3d 40, 43 (Tex. App.–San
Antonio 2002, no pet.).  Specifically, “[w]hen property has been acquired under
circumstances where the holder of legal title should not in good conscience retain the
beneficial interest, equity will convert the holder into a trustee.” Lesikar v. Rappeport,
33 S.W.3d 282, 303 (Tex. App.–Texarkana 2000, pet. denied) (citing Talley v.
Howsley, 176 S.W.2d 158 (Tex. 1943)). 
3. Application of the Law of Constructive Trusts to the Facts
         We find that the circumstances under which the Leaches collected the
$8,400.00 advance rent from H&R Block rendered it “unconscientious”
for them to retain and enjoy the beneficial interest of the full amount. See
Fitz-Gerald, 237 S.W.2d at 262-63. Said another way, we find that the Leaches could
not in “good conscience” retain their beneficial interest in the full amount of the rent. 
See Lesikar, 33 S.W.3d at 303. Equity converted them into trustees. See id. 
         The Leaches do not dispute that they recouped their $5,064.00 investment



plus a twenty-five percent premium, for a total of $6,327.75. They do not dispute
that they received an additional $1,242.74 in prorated rent without having to expend
any effort in securing a tenant for the property. Nor do they dispute that they could
have realized a return on their investment sooner if they had accepted the Trust’s
June 22 tender. The trial court did not award the Trust pre-judgment interest or
attorney fees, and it taxed court costs against the party who incurred them. Thus, we
find that the relief fashioned by the trial court did not operate inequitably on the
Leaches. See Kress, 261 S.W.2d at 704. 
         The trial court asked, “Which decision is more equitable?” See
English, 274 S.W.2d at 669. In working out justice in the most efficient manner, the
trial court answered that question: (1) by prorating the rent between the parties; (2) in
imposing a constructive trust over the Trust’s portion; (3) in awarding exemplary
damages to the Trust; but (4) denying the Trust pre-judgment interest and attorney
fees; and (5) by not taxing the Trust’s costs against the Leaches or the Leaches’ costs
against the Trust. See id.; see also Fitz-Gerald, 237 S.W.2d at 262. We conclude
that the trial court did not act arbitrarily, unreasonably, or without regard to guiding
legal principles or supporting evidence. See Welder, 985 S.W.2d at 180. Rather, its
judgment was in keeping with the basic principles of equity and justice. See
Ginther, 675 S.W.2d at 728. We hold that the trial court did not abuse its discretion
in imposing a constructive trust over the Trust’s prorated portion of the rent. See
Weiss, 984 S.W.2d at 767. We overrule the Leaches’ third issue. We turn to their
alternative legal- and factual-sufficiency challenges to the damages awarded by the
judgment. 
V. DAMAGES ANALYSIS
A. Actual Damages
         In two sub-issues within their fourth issue, the Leaches assert that the evidence
is legally and factually insufficient “to support a judgment of $7,700.00 in favor of the
Trust.” They first argue that the trial court awarded $7,157.26 in actual damages and
$42.74 in exemplary damages, for a total of only $7,200.00. The Trust suggests that
a clerical error occurred in the judgment and urges that we modify the judgment
to $7,200.00. 
         In their second sub-issue in issue four, the Leaches contend that the date the
Trust redeemed the property was not June 22, 2000, the date the trial court found the
Trust tendered the redemption amount to the Leaches. Rather, they assert that the
Trust did not redeem the property until August 4, 2000, the date it tendered payment
to the tax assessor-collector. They argue that the Trust’s June 22 tender was
conditional in that it was tied to repayment by the Leaches of the Trust’s claimed
prorated share of the rent. Therefore, the Leaches urge, the Trust’s prorated portion
of the $8,400.00 equals $6,190.68,


 not $7,157.26. The Trust responds that it
tendered a check to the Leaches on June 22 for the total redemption amount, which
the Leaches could have negotiated without any effect on the rent dispute. The Trust
argues that its assertion in the June 22 letter of entitlement to a prorated portion of
the rent was an additional, not conditional, demand. 
         We note that “[a]n unconditional offer by a debtor or obligor to pay
another . . . a sum not less in amount than that due on a specified debt
or obligation” is a tender of payment. Baucum v. Great Am. Ins. Co. of
N.Y., 370 S.W.2d 863, 866 (Tex. 1963). The party to whom the tender is made
must be able to acquire possession of the funds without special effort. Id. 
Specifically, tender of the statutory amount under section 34.21 must be “unqualified”
to effect redemption. Rotge v. Murphy, 198 S.W.2d 932, 936 (Tex. Civ. App.–San
Antonio 1946, writ ref’d n.r.e.). We also note that we must liberally construe the
redemption statutes. McGuire v. Bond, 271 S.W.2d 508, 511 (Tex. Civ. App.–El
Paso 1954, writ ref’d n.r.e.). All that is required is substantial compliance with
section 34.21‘s requirements. Macha v. Carameros, 674 S.W.2d 491, 493 (Tex.
App.–El Paso 1984, no writ). 
         Findings of fact in a case tried to the court have the same force and dignity as
a jury’s verdict. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); City of Pharr
v. Boarder to Boarder Trucking Serv., Inc., 76 S.W.3d 803, 807 (Tex. App.–Corpus
Christi 2000, pet. denied). We apply the same standards in reviewing legal- and
factual-sufficiency challenges following a bench trial that we use following a jury
verdict. Pagel v. Whatley, 82 S.W.3d 571, 574 (Tex. App.–Corpus Christi 2002, pet.
denied) (per curiam). When reviewing sufficiency challenges following a bench trial,
we uphold the judgment on any theory of law applicable to the case. In re W.E.R.,
669 S.W.2d 716, 717 (Tex. 1984). 
         Thus, since the Trust bore the burden of proof at trial, we analyze the Leaches’
fourth issue as a “no-evidence” challenge. See Ed Rachal Found. v. D'Unger,
117 S.W.3d 348, at *60 (Tex. App.–Corpus Christi 2003, no pet. h.) (en
banc) (Castillo, J., concurring and dissenting) (citing Gooch v. Am. Sling
Co., 902 S.W.2d 181, 183-84 (Tex. App.–Fort Worth 1995, no writ)). In reviewing
the trial court’s findings of fact in the context of a no-evidence challenge, we
consider only the probative evidence and inferences that support the challenged
finding, disregarding all evidence and inferences to the contrary. Lenz v.
Lenz, 79 S.W.3d 10, 19 (Tex. 2002). With the no-evidence scope of review in
mind, we find that the record reflects that the Trust tendered an
unqualified redemption in the required amount of $6,327.75 to the Leaches on
June 22, 2000.  See Baucum, 370 S.W.2d at 864; see also Rotge, 198 S.W.2d
at 936. The record further reflects that the Leaches could have acquired possession
of the tendered funds without special effort by the simple expedient of claiming the
Trust’s certified letter. See Baucum, 370 S.W.2d at 864. Accordingly, we hold the
evidence legally sufficient to support the trial court’s finding of $7,157.26 in actual
damages. Similarly, after examining and considering all of the evidence, not just the
evidence that supports the finding, we further hold the evidence factually sufficient. 
See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). 
 

 B. Exemplary Damages
         In their fifth issue, the Leaches assert that the evidence is legally and factually
insufficient to support the trial court’s finding of exemplary damages. They argue that
an award of exemplary damages must be supported by clear and convincing evidence
of fraud or malice. See Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (Vernon 1997). 
They point out that there is no evidence to support the trial court’s finding of fraud. 
In response, the Trust argues that the trial court’s finding that the Leaches’ conduct
was unconscionable supports the exemplary damages award. 
         Texas has a strong public policy against conversion of property. Castilleja v.
Camero, 414 S.W.2d 424, 428 (Tex. 1967). The strength of that policy is
demonstrated by the fact that exemplary damages may be recovered when the
conversion is accompanied by fraud or oppression. Id. However, recovery of
exemplary damages in a conversion action is not limited to those circumstances. 
Unconscionable conduct resulting in the imposition of a constructive trust may support
an award of exemplary damages. See Lesikar, 33 S.W.3d at 310. Also, exemplary
damages are available if the conversion was of a “wanton or malicious nature.” 
Sanders, 2 S.W.3d at 704 (citing George Thomas Homes, Inc. v. Southwest Tension
Sys., Inc., 763 S.W.2d 797, 800 (Tex. App.–El Paso 1988, no writ)). 
         Malice may be actual or implied. Taiwan Shrimp Farm Village Ass’n v. U.S.A.
Shrimp Farm Dev., 915 S.W.2d 61, 72 (Tex. App.–Corpus Christi 1996, writ denied). 
Implied or legal malice exists when wrongful conduct is intentional and without just
cause or excuse. Sanders, 2 S.W.3d at 704 (citing George Thomas Homes,
Inc., 763 S.W.2d at 800). Ill will may be implied from the knowing conversion of
another’s property without justification. Taiwan Shrimp, 915 S.W.2d at 72. Similarly,
malice may be implied from the knowing conversion of another’s property when the
defendant knew or should have known it had no legal right to the property. Id. 
Implied malice is sufficient to support exemplary damages. Id. 
         We again consider only the probative evidence and inferences that support the
trial court’s finding of $42.74 in exemplary damages, disregarding all evidence and
inferences to the contrary. See Lenz, 79 S.W.3d at 19. The record presents
undisputed evidence that the Leaches had actual knowledge of: (1) H&R Block’s
status as a long-time tenant of the Trust subject to an existing lease; and (2) the
Trust’s statutory right of redemption. Armed with this knowledge, the Leaches
entered into a year-long lease with H&R Block that applied the annual rent to the first
month and provided for the remaining term to be rent free. Moreover, the record does
not show that the Leaches asserted a good-faith belief in their entitlement to the entire
rent proceeds as justification for their refusal to turn over the Trust’s prorated share. 
Rather, the Leaches refused to sign a quitclaim deed and did not accept the Trust’s
tender of the statutory redemption amount. Thus, the record supports an inference
that the Leaches, knowing they would have no legal right to any rent after the Trust
redeemed the property, intentionally: (1) structured the lease to realize, in addition to
the redemption premium, the profit of a full year’s rent for a few weeks’ ownership;
and (2) increased their prorated share of the rent over time by delaying the Trust’s
eventual redemption. We find that the Trust met its burden of proving its entitlement
to exemplary damages by clear and convincing evidence of either the Leaches’
unconscionable conduct or of their intentional conduct of such “wanton or malicious
nature” as to constitute implied or legal malice sufficient to support exemplary
damages. See Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (Vernon 1997); see also
Lesikar, 33 S.W.3d at 310; Sanders, 2 S.W.3d at 704; Taiwan Shrimp, 915 S.W.2d
at 72. 
         Finally, after examining and considering all of the evidence, not just the evidence
that supports the finding, we also hold the evidence factually sufficient to support
exemplary damages. See Maritime Overseas Corp., 971 S.W.2d at 406-07. 
Accordingly, we uphold the trial court’s award of exemplary damages on the grounds
that it is supported by legally and factually sufficient evidence of the
Leaches’ unconscionable or intentional and unjustified conduct. See In re
W.E.R., 669 S.W.2d at 717. Thus, we do not reach the Leaches’ contention that the
evidence is legally and factually insufficient to support the trial court’s finding of fraud. 
See Tex. R. App. P. 47.1. 
C. Disposition of Damages Issues
         In light of the Trust’s agreement discussed above, we hold that the trial court’s
findings of fact support a judgment in the amount of $7,200.00, not $7,700.00. We
sustain the Leaches’ first sub-issue within issue four. We overrule the Leaches’ fourth
issue in all other respects. We also overrule the Leaches’ fifth issue. 
VI. CONCLUSION
         We modify the judgment to $7,200.00 and, as modified, affirm. We assess the
costs on appeal to the party who incurred them. 

                                                                        ERRLINDA CASTILLO
                                                                        Justice

Opinion delivered and filed this
the 4th day of December, 2003.